The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Randy Joseph LESKO, Defendant-Appellant.

No. 83CA0352.

Colorado Court of Appeals, Div. III.

Feb. 21, 1985.

Rehearing Denied March 21, 1985.

Certiorari Denied June 24, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maureen Phelan, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Martin J. Gerra, III, Deputy State Public Defender, Denver, for defendant-appellant.

METZGER, Judge.

Defendant, Randy Lesko, appeals the judgment of conviction entered on a jury verdict finding him guilty of first-degree murder after deliberation, felony murder, conspiracy to commit murder, and conspiracy to commit aggravated robbery. He alleges that the trial court erred 1) in failing to suppress evidence obtained from him as a result of an illegal, warrantless arrest; 2) in failing to instruct the jury that the elements of complicity must be proved beyond a reasonable doubt; and 3) in imposing two concurrent life sentences for one first-degree murder. We find no error in the trial court's rulings on the first two issues, but remand for entry of only one judgment of conviction of murder.

The facts adduced at the suppression hearing were as follows. At approximately 9:30 p.m. on April 7, 1982, Robert Watson, a driver for the Yellow Cab Company, was found stabbed to death in his cab near the Trailer Haven Trailer Court in Aurora, Colorado. He was found by an Aurora police officer, who had been notified as a result of Watson's call to the Yellow Cab dispatcher, giving his location and saying that he had been robbed, and needed help.

The following morning, police officers listened to the tape recording of a telephone conversation between the Yellow Cab dispatcher and what the dispatcher believed to be a young, Caucasian male, in which the latter requested that a cab be sent to the Aurora Mall with an ultimate destination of the Trailer Haven Trailer Court in Aurora. Robert Watson drove the cab that answered that request. Behind the driver's seat on the floor of Watson's vehicle, officers found a Colorado driver's license which had been issued ten days previously to defendant, a young, Caucasian male, a Denver Municipal Court summons and complaint for jaywalking issued to defendant, and a small piece of paper with a telephone number on it. Although these papers were discovered on the rear floor of the cab, they were perfectly clean and undamaged. The results of an autopsy performed on Mr. Watson indicated that he had been stabbed from behind and slightly to the right.

After further investigation, a police officer telephoned the number listed on the piece of paper found in the back of the taxi cab, and asked for "Mr. Lesko." The woman answering the telephone indicated that he could be found at his girlfriend's trailer in Commerce City, and gave a telephone number.

Accompanied by Commerce City police officers, Aurora police arrived at a trailer belonging to Ms. Diana Love. One officer knocked on the door to the trailer, displayed his badge and I.D. card, and asked Diana Love whether he could enter the trailer to talk to her. She stepped back, and as the officer stepped into the trailer he recognized defendant sitting on a sofa eating supper. He requested defendant to stand up, and performed a pat down search, which disclosed a folding knife in defendant's right pants pocket. He removed the knife, took Lesko outside, advised him he was under arrest, and handcuffed him. At police headquarters, defendant was advised, his clothing was removed from him, and he was given jail clothing.

## I.

Defendant sought suppression of the clothing he wore when arrested. He con-

ceded at the suppression hearing that there was probable cause to believe that a crime had been committed. However, he contended that there was no probable cause to believe that he was the person who committed the crime, and argued that, therefore, his warrantless arrest was fatally defective. Alternatively, defendant asserted that he had an expectation of privacy in Ms. Love's home on the evening when he was arrested, and that his warrantless arrest was illegal because it was made in a private home absent consent or exigent circumstances. We disagree with both contentions.

### A.

■ Probable cause to arrest exists when the facts and circumstances within an officer's knowledge are sufficient to support a reasonable belief that a crime has been committed by the person arrested. The surrounding facts considered in their totality can constitute probable cause even though no one fact, when viewed alone, would be sufficient. *People v. Eichelberger*, 620 P.2d 1067 (Colo.1980). The information available to the police must be viewed in a common sense and realistic fashion. *People v. Cook*, 665 P.2d 640 (Colo.App.1983). We conclude that the evidence here was sufficient to warrant a reasonably cautious and prudent police officer in believing, in light of his training and experience, that defendant had committed the homicide. *People v. Nanes*, 174 Colo. 294, 483 P.2d 958 (1971).

The defendant's provisional driver's license, with his photograph, a summons and complaint issued to him, and a telephone number which was traced to him, were found on the rear floor of the victim's Yellow Cab. These articles were clean, even though positioned where someone's foot would likely have stepped upon them had that person been seated directly behind the driver of the cab. The left rear door of the taxi cab was open at the time it was discovered, indicating that someone had made a hasty exit. The autopsy results indicated that the victim had been stabbed

from behind, with a knife. Defendant had a knife in his possession prior to the time of his arrest. Taking all these facts together, we conclude that the trial court correctly found that there was probable cause to arrest defendant for the murder of Robert Watson.

### B.

Defendant's related contention is that, as a guest, he had a reasonable expectation of privacy in Diane Love's home, and that therefore his warrantless arrest violated his Fourth Amendment rights. Defendant concedes that he would have had no valid objection to a police search of Ms. Love's home for him had she consented to such a search, but he argues that the record reflects no such consent. We disagree.

■ While the Fourth Amendment requires that police obtain an arrest warrant before entering a suspect's own home to arrest him, *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), there is no requirement in either the United States or the Colorado Constitution that a warrant be obtained before arresting a defendant when the owner of the private place in which the defendant is found has consented to the officers' entry therein.

■ Where such consent is at issue, the prosecution bears the burden of showing that it was freely given, and mere acquiescence to a claim of lawful authority is insufficient. *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). The question of voluntariness of consent is one of fact, and must be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *People v. Helm*, 633 P.2d 1071 (Colo.1981).

■ Here, the uncontradicted testimony of the arresting officer indicates that Diana Love unequivocally stepped aside and allowed him to enter her trailer. This occurred at approximately 9:30 p.m., and the record contains no evidence of the use of weapons or force during his conversation

with her. Ms. Love did not testify at the suppression hearing, and defendant introduced no evidence at that hearing. Therefore, the trial court's findings, that the prosecution met its burden of establishing consent, were supported by the record, and defendant's argument must fail. *Cf. People v. Santisteven,* 693 P.2d 1008 (Colo. App.1984).

## II.

■ Second, defendant argues, for the first time on appeal, that the jury should have been instructed that each element of complicity was required to be proved beyond a reasonable doubt. We disagree. The jury was instructed that the burden was upon the People to prove the existence of all elements necessary to constitute each crime charged beyond a reasonable doubt. As well, the jury was instructed, in statutory language, as to the elements of complicity. These instructions, taken together, were sufficient to inform the jury adequately of the law concerning the issues in the case. *People v. Gresham,* 647 P.2d 243 (Colo.App.1981).

## III.

■ Finally, defendant contends that, since only one conviction and one punishment can occur for one first-degree murder, the trial court erred in imposing concurrent sentences for felony murder and for murder after deliberation. The People confess error, and we agree that the trial court's sentence in this case is improper. *People v. Bartowsheski,* 661 P.2d 235 (Colo.1983).

Accordingly, the judgments of conviction as to first-degree felony murder and murder after deliberation are vacated, and the cause is remanded to the trial court to enter a judgment of conviction on only one of these crimes, and to resentence the defendant accordingly. *See People v. Lowe,* 660 P.2d 1261 (Colo.1983). The judgments of conviction on the conspiracy counts are affirmed.

STERNBERG and TURSI, JJ., concur.