The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Donnie Rae LINDSEY,
Defendant–Appellant.

No. 88CA0274.

Colorado Court of Appeals,
Div. I.

Aug. 16, 1990.

Rehearing Denied Sept. 6, 1990.

Certiorari Denied March 11, 1991.

**1136**

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Hope P. McGowan, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender Janet Fullmer Youtz, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge DAVIDSON.

Defendant, Donnie Ray Lindsey, appeals from a judgment of conviction entered upon a jury verdict finding him guilty of first degree murder, attempted aggravated robbery, and use of a deadly weapon. We affirm.

## I.

Defendant was arrested by Denver police officers in his girlfriend's house in the City of Aurora. In response to a knock on the door, the girlfriend admitted the officers and spoke with them briefly. They became suspicious that defendant was present, entered a bedroom, and found him in a closet.

Defendant contends that the trial court erred in denying his motion to suppress his confession and other evidence arising from his warrantless arrest. He asserts that the arrest by Denver police in Aurora was extraterritorial and, as such, in violation of § 16–3–106, C.R.S. (1986 Repl.Vol. 8A), was not otherwise justified and, therefore, violated his Fourth Amendment right to be free from unreasonable searches and seizures. Although we agree that the arresting officers technically violated the statute, we agree with the trial court that the arrest was otherwise justified and, therefore, that suppression was not required.

Section 16–3–106, by negative inference, limits peace officers' authority to arrest to the territorial boundaries of their jurisdiction unless they are in "fresh pursuit" of a suspect, *People v. Lott,* 197 Colo. 78, 589 P.2d 945 (1979), or are accompanied by officers of the jurisdiction in which the arrest was made. *See People v. Wolf,* 635 P.2d 213 (Colo.1981). "Fresh pursuit" means the continuous and uninterrupted pursuit of a suspect without unnecessary delay after the commission of an offense. *Charnes v. Arnold,* 198 Colo. 362, 600 P.2d 64 (1979); *see* § 16–3–104(1)(c), C.R.S. (1986 Repl.Vol. 8A).

The People do not argue that the Denver police officers drove from Denver

to Aurora in fresh pursuit of defendant. They assert, instead, that fresh pursuit came into play after the officers had entered defendant's girlfriend's house, with her consent, and realized that defendant was there. The arrest, however, was some six weeks after the commission of the offense. Therefore, it was not accomplished in "fresh pursuit" of defendant, and, in order to comply with the statute, the Denver officers should have contacted Aurora police. *See Charnes v. Arnold, supra.*

■ An arrest in violation of the statute, however, does not mandate suppression of evidence obtained therefrom unless the violation is willful, *People v. Vigil*, 729 P.2d 360 (Colo.1986) or so egregious as to violate the defendant's constitutional rights. *People v. Hamilton*, 666 P.2d 152 (Colo. 1983).

■ Here, the trial court implicitly found that the officers' conduct was not willful. The officers testified that they traveled to Aurora, not specifically to arrest the defendant, but rather to investigate leads of which they had learned that evening. Although one officer stated that he thought there was a "good chance" the defendant would be at the house, the other said the opposite, and both officers described the purpose of the trip as investigatory. In addition, contrary to standard procedure when arresting a murder suspect, they entered the house with holstered rather than drawn weapons, and without any back-up officers. Because there is competent evidence to support the trial court's finding on this issue, and because the finding depended on an assessment of witness credibility, we may not disturb it on review. *See People v. Torand*, 622 P.2d 562 (Colo.1981).

■ Defendant argues, however, that his arrest was unconstitutional because the officers searched the house without either consent or exigent circumstances. The People, on the other hand, assert that defendant's girlfriend consented to the search and, even if she did not, that probable cause and exigent circumstances rendered the arrest proper. Because defendant concedes that the record supports a finding of probable cause and of consent by his girl-

friend to enter her home, and because we conclude that exigent circumstances justified the arrest even if no consent was given to search the house, we need not consider whether defendant's girlfriend consented to the scope of the search.

The Fourth Amendment protects against nonconsensual entries by law enforcement officers into a dwelling for the purpose of making warrantless arrests. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). To the extent, and only to the extent, consent to enter and search has been given by the dwelling's owner, *People v. Thiret*, 685 P.2d 193 (Colo.1984), an arrest does not violate the Fourth Amendment as long as the officers have probable cause to arrest. *People v. Lesko*, 701 P.2d 638 (Colo.App.1985). However, to the extent consent has not been given, the arrest is free from Fourth Amendment taint only if both probable cause and exigent circumstances exist at the time of entry. *Payton v. New York, supra; People v. Drake*, 785 P.2d 1257 (Colo.1990).

Exigent circumstances exist only when there is a pressing need "that [can]not brook the delay incident to obtaining a warrant." *Dorman v. United States*, 435 F.2d 385 (D.C.Cir.1970). Pertinent considerations include whether:

"(1) a grave offense is involved, particularly a crime of violence; (2) the suspect is reasonably believed to be armed; (3) there exists a clear showing of probable cause to believe that the suspect committed the crime; (4) there is a strong reason to believe that the suspect is in the premises being entered; (5) the likelihood exists that the suspect will escape if not swiftly apprehended; and (6) the entry is made peaceably."

*People v. Miller*, 773 P.2d 1053 (Colo.1989).

Here, it is conceded that defendant's girlfriend consented to the officers' entrance into her home. After the officers entered, the record reflects that they asked the girlfriend a few questions concerning the defendant. Her nervous responses, as described by the officers—including stum-

bling on words, head and hand movements pointing to the back of the house, and finally, the statement that defendant had been there but had just left and would be back—caused the officers strongly to suspect that defendant was on the premises.

After the officers, in response to the girlfriend's gestures, had gone to the back of the house, they saw and heard movement in a cluttered closet. This gave them still more reason to believe the defendant was there. At that point, the officers did, in fact, draw their weapons.

Because of earlier statements to the police by a recent roommate of defendant's, the officers had a clear showing of probable cause to arrest defendant for a grave offense and had reason to believe that defendant, now that he knew he was implicated, would immediately attempt to flee from the area. Even before knowing he had been implicated in the crime, defendant reportedly had told his roommate that he intended to leave town.

Because the trial court's finding that exigent circumstances existed is supported by the record, we will not disturb it. And, because exigent circumstances and probable cause for the arrest existed, defendant's arrest was not in violation of the Fourth Amendment, and the fruits of the arrest were properly admitted into evidence. *See People v. Drake, supra.*

## II.

 Defendant next contends that his right to privacy, as guaranteed by the Due Process Clause of the Fourteenth Amendment, was violated when the trial court allowed the prosecution to question his stepmother about a confession he made to her in confidence. We do not agree.

Whether the constitutional right to privacy encompasses a privilege to prevent the introduction of testimony concerning confidential communications between parent and child is a question that has not been decided in Colorado. And, we do not now resolve that issue because, based on the law applicable to similar existing privileges, we conclude that even if such a privilege exists, the defendant has waived it here.

Testimonial privileges based on confidential communications are waived when the communication is made in the presence of a third party, *South Carolina Insurance Co. v. Fisher,* 698 P.2d 1369 (Colo.App. 1984), and when the party asserting the privilege has voluntarily revealed the confidential information to another. *United States v. Bump,* 605 F.2d 548 (10th Cir. 1979); *see Wolfle v. United States,* 291 U.S. 7, 54 S.Ct. 279, 78 L.Ed. 617 (1934).

Here, it is undisputed that the communication defendant and his stepmother sought to exclude was made by defendant in the presence not only of his stepmother, but also of his brother. It is also undisputed that defendant revealed both the subject matter (a confession to the crime) and the fact of the communication to his roommate. Accordingly, any privilege based on the confidential nature of the communication was waived.

## III.

 Defendant also asserts that the trial court erred in admitting evidence of defendant's admission that he had unsuccessfully followed another woman with the intention of stealing her purse just prior to the incident for which he was on trial. He argues that the evidence concerned a similar offense that was not probative of any issue at trial and was thus inadmissible under CRE 404. Again, we disagree.

Evidence of crimes independent of that for which a defendant is on trial is to be admitted only in limited circumstances and is subject to specific precautions. CRE 404; *Stull v. People,* 140 Colo. 278, 344 P.2d 455 (1959). However, evidence of other potentially criminal conduct "that occurs 'contemporaneously with or is part and parcel of the crime charged is part of the *res gestae* of the offense, and consequently is not subject either to the general rule that excludes evidence of prior criminality or to the procedural requirements of *Stull.*'" Such evidence is admitted to help the fact finder understand the context in which the alleged crime occurred. *People v. Czemerynski,* 786 P.2d 1100 (Colo.1990).

A trial court's rulings with respect to the reception of evidence will not be disturbed absent an abuse of discretion. *See People v. Jackson,* 627 P.2d 741 (Colo.1981).

The prior conduct in question here occurred immediately before, and could reasonably be considered part and parcel of, the incident for which defendant was on trial. Therefore, the trial court did not abuse its discretion in admitting the evidence thereof, without procedural precautions, to demonstrate the context of the crime. *See Williams v. People,* 724 P.2d 1279 (Colo.1986).

## IV.

 We also reject defendant's contention that the trial court erred in failing to give a proper *Curtis* advisement and to ascertain explicitly on the record that defendant personally, voluntarily, intelligently, and knowingly waived his right to testify.

Pursuant to *People v. Curtis,* 681 P.2d 504 (Colo.1984), a trial court must seek to assure that a defendant's waiver of his right to testify is voluntary, knowing, and intentional by advising the defendant on the record:

> "that he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him, that if he has been convicted of a felony the prosecution will be entitled to ask about it and thereby disclose it to the jury, and that if the felony is disclosed to the jury then the jury can be instructed to consider it only as it bears upon his credibility.... [T]he defendant should also be advised that he has a right not to testify and if he does not testify then the jury can be instructed about that right."

The burden is initially on the prosecution to prove a prima facie case of an effective waiver, and thereafter, it shifts to the defendant to present evidence from which one could reasonably infer that waiver was not voluntary, knowing, and intelligent. *People v. Curtis, supra.*

Here, the trial court advised defendant of each of the aforementioned considerations, and defendant affirmatively responded to the court's questions as to whether he understood them. This demonstration on the record satisfies the prosecution's prima facie case. *See People v. Roelker,* 780 P.2d 17 (Colo.App.1989).

Defendant asserts that the trial court should have explicitly asked him on the record if he was personally, voluntarily, intelligently, and knowingly waiving his right to testify and that it should have explicitly described the advantages and disadvantages of testifying. However, without any evidence that defendant lacked knowledge on these matters, that his decision would have been different after these additional precautions, or that he had a dispute with his attorney with respect to whether he would testify, these assertions are insufficient to rebut the prima facie case of waiver. *See People v. Woodard,* 782 P.2d 1212 (Colo.App.1989); *cf. People v. Palmer,* 680 P.2d 525 (Colo.1984) (where record disclosed that defendant wanted to testify and had a disagreement with his lawyer over whether he should, his silence upon his attorney's statement that he rested his case did not demonstrate effective waiver).

## V.

 Defendant next asserts that the trial court abused its discretion in denying his motion for a change in venue because of publicity that was either so massive, pervasive, and prejudicial that denial of a fair trial must be presumed or, alternatively, that, in consideration of the jury voir dire, had an actual adverse effect on the jury panel or a portion thereof.

Only in rare circumstances is the publicity so massive, pervasive, and prejudicial that prejudice can be presumed. *People v. McCrary,* 190 Colo. 538, 549 P.2d 1320 (1976). The publicity here was of a less prejudicial nature than that in *McCrary,* and was similar to that in *McCrary* in having been distributed in large part many months before trial and in having consisted of few front page stories, of few or no

editorial comments as to the defendant's guilt, and of no incriminating evidence that was inadmissible at trial. Accordingly, since no prejudice was presumed in *McCrary*, none may be presumed here.

Similarly, the record of the voir dire discloses that the publicity had little effect on the jury panel. About half of the members of the jury pool indicated that they had read or heard about the case, but many of those could not recall details and none expressed any preconceived notion about defendant's guilt. Only two remembered that defendant had confessed to the crime, and they were successfully challenged for cause. Defendant challenged only 6 members of the 60-member jury pool on the grounds related to pretrial publicity, and 5 of those challenges were ultimately stipulated to or granted. Defendant does not claim that he was forced to exhaust his peremptory challenges in order to exclude jurors who had been affected by publicity.

Under these circumstances we cannot conclude that the trial court abused its discretion in denying the change in venue. *See People v. Bartowsheski*, 661 P.2d 235 (Colo.1983); *cf. People v. Botham*, 629 P.2d 589 (Colo.1981) (defendant was denied a fair trial where more that 90% of the panel had been exposed to pretrial publicity, more than 50% were inclined to believe in defendant's guilt, and 7 of the 14 jurors who heard the case had believed at one time or another that defendant was guilty).

Defendant's allegation of cumulative error is also without merit.

The judgment is affirmed.

PIERCE and SMITH, JJ., concur.