**Billy Ray TYLER, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 92SC150.**

Supreme Court of Colorado,
En Banc.

Feb. 22, 1993.

Rehearing Denied March 15, 1993.

David F. Vela, State Public Defender, Martin Gerra, Deputy State Public Defender, Denver, for petitioner.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Paul Koehler, Asst. Atty. Gen., Denver, for respondent.

Justice ERICKSON delivered the Opinion of the Court.

The court of appeals in *People v. Tyler*, No. 90CA0860 (Colo.App. Nov. 21, 1991), affirmed the judgment of conviction and the sentences imposed on Billy Ray Tyler for second-degree burglary and attempted second-degree murder. The court of appeals concluded that the trial judge's fail-

ure to determine on the record whether Tyler desired to relinquish or exercise his constitutional right to testify did not mandate reversal of his judgment of conviction. We granted certiorari and now affirm.

I

On October 3, 1989, Renee Benson heard a window break in her living room. Benson went into her living room, armed with a handgun, and encountered Tyler.[1] After Benson fired two shots at Tyler, he attacked her and stabbed her four times with a knife. Tyler was arrested and charged with burglary, assault, attempted murder, and crime of violence.

During the trial, after the prosecution rested, the trial judge asked defense counsel outside the presence of the jury if she was "going to have evidence." Defense counsel replied that she had to talk to Tyler and then made a verbal motion for acquittal. After the trial judge denied the motion, he advised Tyler outside the presence of the jury of his right to testify in his own defense in accordance with *People v. Curtis*, 681 P.2d 504 (Colo.1984), and then asked Tyler if he understood the advisement.[2] Tyler responded that he understood the advisement. The trial judge then asked Tyler if he had made a decision. Tyler answered that he had not and asked the trial judge if he could "have a brief time to think about it while [he used] the restroom." The trial judge informed Tyler that he could decide later whether to waive his right to testify.

Following a three-hour recess, the trial judge and counsel discussed proposed jury instructions in Tyler's presence for a half-hour. After a second recess, court was reconvened with Tyler present. The trial judge stated, "I guess we better have defense rest." Defense counsel rested and the trial judge proceeded to instruct the jury. The jury convicted Tyler of second-

---

**1.** Tyler and Benson previously lived with one another and had a child together. However, the couple had recently separated and their relationship had deteriorated. Twice before, Tyler had appeared at Benson's home demanding to see his daughter and had tried to kick down the door.

**2.** Tyler does not contend that the advisement was inadequate.

degree burglary,[3] second-degree assault,[4] attempted second-degree murder,[5] and crime of violence.[6]

A divided panel of the court of appeals initially reversed the judgment of conviction because the trial judge did not determine on the record whether Tyler desired to relinquish or exercise his right to testify. The court of appeals subsequently granted the prosecution's petition for rehearing and issued an opinion affirming the portion of the judgment as to second-degree burglary and attempted second-degree murder. The court of appeals vacated both the portion of the judgment regarding second-degree assault and the consecutive sentences Tyler received for the attempted murder and assault, and remanded with directions for resentencing.

We granted certiorari to decide whether a judgment of conviction must be automatically reversed because the record fails to state a defendant's waiver of the right to testify.[7] We hold that a trial judge's failure to state on the record whether a defendant desires to relinquish or not to exercise his right to testify is not reversible error per se.

## II

█ *Curtis*, 681 P.2d 504, held that a trial judge must ensure that a defendant's waiver of the right to testify is voluntary, knowing, and intentional. *Id.* at 515. In order for a defendant to make a voluntary,

knowing, and intentional decision, he must be aware of the right to testify, the consequences of testifying, and his right to take the stand regardless of counsel's advice to the contrary. *Id.* at 514.

█ In order to ensure that the right to testify is voluntarily, knowingly, and intentionally waived, *Curtis* requires that the trial judge give the defendant an "advisement" outside the presence of the jury:

> [T]hat he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him, that if he had been convicted of a felony the prosecutor will be entitled to ask him about it and thereby disclose it to the jury, and that if the felony conviction is disclosed to the jury then the jury can be instructed to consider it only as it bears upon his credibility.

*Id.*

*Roelker v. People*, 804 P.2d 1336 (Colo. 1991), revisited the issue of the waiver of a defendant's right to testify.[8] *Roelker* addressed the question of "whether *Curtis* requires the trial judge to ask the defendant personally, on the record, whether he wishes to waive his right, or whether it is sufficient for the trial judge to advise the defendant of his right to testify and of the possible consequences of doing so." *Id.* at 1338.

*Roelker* stated that "[t]he actual holding of *Curtis* limits the trial judge's responsi-

---

**3.** § 18-4-203, 8B C.R.S. (1986).

**4.** § 18-3-203(1)(d), 8B C.R.S. (1986). Tyler had been charged with first-degree assault.

**5.** § 18-2-101 8B C.R.S. (1986 & 1992 Supp.). Tyler had been charged with attempted first-degree murder.

**6.** § 16-11-309, 8A C.R.S. (1986 & 1992 Supp.).

**7.** We do not address the decision of the court of appeals vacating the consecutive sentences because the same evidence supported both convictions or vacating Tyler's conviction for second-degree assault because the jury failed to complete the special verdict form.

**8.** The facts of *Roelker* are very similar to those of the present case. In *Roelker*, the trial judge

properly advised the defendant of his right to testify pursuant to *Curtis*. When asked if he understood his right to testify and the consequences of invoking that right, the defendant responded that he did. The trial judge subsequently stated, in the presence of the defendant, that the record should reflect that the defendant and his counsel had elected not to present any testimony. The record, however, did not contain an affirmative statement by the defendant stating that he wished to waive the right to testify. Moreover, when defense counsel later said that the defense was going to rest, the defendant did not make any objection. *Roelker*, 804 P.2d at 1339.

The only factual difference between *Roelker* and the present case is the trial judge's statement in *Roelker* that "the record should reflect that Roelker and his counsel had elected not to present any testimony." *Id.*

bility to advising the defendant of his right to testify and the consequences of doing so. *Curtis* contains dictum supporting an argument that either defense counsel or the trial judge should question the defendant on the record in order to 'determine the defendant's wishes.'" *Id.* *Roelker*, however, "reject[ed the] argument that the dictum of *Curtis* mandates a rigid requirement that the trial court question the defendant to determine whether his waiver is truly voluntary." *Id.* at 1339.

Instead, *Roelker* stated that "*Curtis* did not decide what the minimum requirements are to establish a waiver of a defendant's right to testify in his own defense." *Id.* Despite the failure of the trial judge to ask the defendant personally, on the record, whether he wished to waive the right to testify, *Roelker* affirmed the trial judge's determination that the defendant effectively waived his right to testify. *Id.*

### III

■■■ In this case, we address the waiver of a defendant's right to testify in a situation where the record contains no explicit reference that the defendant waived his right to testify. While we reaffirm the principle that a waiver of the right to testify must be voluntary, knowing, and intentional to be effective, we hold that it is not reversible error per se when the waiver does not appear on the record.

■■■ In general, the burden is on the prosecution to show an effective waiver of a fundamental constitutional right. *Curtis*, 681 P.2d at 504 n. 16 (citing *Barker v. Wingo*, 407 U.S. 514, 529, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972)). If the initial burden is met by the prosecution through the establishment of a prima facie case of waiver, then in order to permit the court to find the waiver ineffective, the defendant must present evidence from which the court could reasonably infer that waiver was not voluntary, knowing, and intentional. *Curtis*, 681 P.2d at 504 n. 16; *see also People v. Lindsey*, 805 P.2d 1134, 1139 (Colo.App.1990) (noting that burden is initially on the prosecution to prove a prima facie case of effective waiver, thereafter,

burden shifts to the defendant to present evidence). In our view, in this case, the prosecution established a prima facie case of waiver of the right to testify that Tyler has not rebutted.

■■■ As in *Roelker*, Tyler was advised of his right to testify, chose to remain silent when his defense counsel rested, and never expressed a desire to testify. This evidence satisfies the prosecution's burden of establishing a prima facie waiver. *See Lindsey*, 805 P.2d at 1139 (holding that prima facie case was satisfied by defendant's affirmative response to trial judge's questions as to whether he understood *Curtis* advisement); *see also People v. Norman*, 703 P.2d 1261, 1271 (Colo.1985) (holding that defendant's execution of written document containing information regarding the right to jury trial and subsequent acknowledgement that he had signed the document satisfied prosecution's burden of establishing prima facie waiver of right to jury trial).

Once the prosecution satisfied the prima facie case, the burden was on Tyler to present evidence from which it could be reasonably inferred that the waiver was not voluntary, knowing, and intentional. In this case, Tyler has not alleged that the trial judge, his defense counsel, or anyone else prevented him from testifying, nor did Tyler file a post-trial motion asserting that his desire to testify was thwarted. *See, e.g., Curtis*, 681 P.2d at 508; *Palmer v. People*, 680 P.2d 525, 526 (Colo.1984). Moreover, Tyler has not presented sufficient evidence from which it could be reasonably inferred that the waiver of his right to testify was not voluntary, knowing, and intentional. *See, e.g., Curtis*, 681 P.2d at 515 (finding no waiver where Curtis' desire to testify at trial had been thwarted by defense counsel); *Palmer*, 680 P.2d at 527 (finding that silence did not demonstrate effective waiver where record showed that defendant wanted to testify and disagreed with defense counsel, and that defense counsel had exercised *his* own judgment).

Instead, Tyler claims that his conviction must automatically be reversed because the record does not show that he personally waived his right to testify. We disagree. Tyler has failed to even allege that his waiver was not voluntary, knowing, and intentional, let alone present evidence from which it could be reasonably inferred that the waiver of his right to testify was not voluntary, knowing, and intentional. *See, e.g., Lindsey*, 805 P.2d at 1139 (holding that defendant failed to rebut prima facie case of waiver even though trial judge did not explicitly ask defendant on the record if he was personally, voluntarily, intelligently, and knowingly waiving his right to testify); *cf. People v. Mitchell*, 829 P.2d 409, 412–13 (Colo.App.1991) (rejecting defendant's argument that reversal was required because record failed to contain express waiver of right to testify).[9]

### IV

Accordingly, we affirm the decision of the court of appeals affirming the judgment of conviction in part, vacating in part, and remanding for resentencing.

LOHR, J., dissents and KIRSHBAUM, J., joins parts I and III of the dissent.

### Justice LOHR dissenting:

I respectfully dissent to the majority's conclusion that the trial court's failure to determine on the record whether Tyler effectively waived his right to testify at trial does not require that his judgment of conviction be reversed. *See* maj. op. at 142. As set forth below, I disagree with the majority's reliance on our decision in *Roelker v. People*, 804 P.2d 1336 (Colo. 1991), as support for this conclusion. I also dissent to the majority's holding that the prosecution established a prima facie case of waiver. I would therefore reverse the judgment of the court of appeals affirming Tyler's conviction.

### I

In *People v. Curtis*, 681 P.2d 504, 509–11, 514–15 (Colo.1984), we concluded that a defendant's right to testify at trial is a fundamental right embedded in the due process clauses of both the United States Constitution, amend. XIV, and the Colorado Constitution, art. II, § 25, and that any waiver of this right must be voluntary, knowing, and intentional. We also determined that procedural safeguards are necessary to ensure that this important right will be given effect. *Id.* at 514–15. Based on the principles that courts must not presume that defendants acquiesce in any loss of their fundamental constitutional rights and that all reasonable presumptions must be indulged against finding waivers of such rights, we concluded that trial judges must determine in each case, on the record, whether a defendant has effectively waived the right to testify. *Id.*

In *Roelker*, 804 P.2d 1336, we were presented with the question of whether the trial judge complied with the requirements set forth in *Curtis* in finding that the defendant effectively waived this constitutional right. The majority in *Roelker*[1] first reviewed our decision in *Curtis* and reacknowledged the principle that "the trial judge has the responsibility to determine on the record whether the accused has effectively waived his right to testify." *Id.* at 1338. However, after determining that "*Curtis* did not decide what the minimum requirements are to establish a waiver of a defendant's right to testify in his own defense," the majority concluded that a trial judge does not need to question the defendant personally on the record as to whether his waiver is truly voluntary. *Id.* at 1339.

The majority in *Roelker* then proceeded to assess whether the evidence supported what it characterized as "the trial court's determination that Roelker effectively

---

**9.** Absent an allegation that the defendant wished to testify, it is difficult to see how a court could ever reasonably infer that the waiver of his right to testify was not voluntary, knowing, and intentional or conclude that the error was reversible.

**1.** I dissented in *Roelker* and continue to adhere to the views expressed in that dissent. *See Roelker*, 804 P.2d at 1340–42 (Lohr, J., dissenting).

waived his right to testify."[2]  *Id.*  The majority held that the determination "was supported by competent evidence in the record." *Id.* Specifically, it pointed to the existence of an adequate *Curtis* advisement, an acknowledgment by the defendant on the record that he understood his right to testify and the consequences of invoking that right, evidence that the defense counsel advised the judge in a bench conference after the prosecution rested that he and the defendant had decided not to present any testimony, and the lack of any objection by the defendant either when the judge reiterated that decision on the record in the defendant's presence or when the defendant's attorney announced that the defense would not present evidence and would rest. *Id.* The majority in *Roelker* correctly recognized the need for a judicial finding of effective waiver pursuant to our decision in *Curtis* and that its role on review was to assess whether that determination was supported by competent evidence in the record. Thus, although the majority concluded in *Roelker* that *Curtis* did not require the trial judge to explore with the defendant on the record whether he wished to waive his right to testify, it continued to recognize the obligation of trial judges to make specific on-the-record determinations that defendants have effectively waived that right.

In today's decision, the majority abolishes this requirement and considers *Roelker* as support for affirming Tyler's judgment of conviction. *See* maj. op. at 142–43. However, in contrast to the situation presented in *Roelker*, the record before us contains no finding by the trial court that Tyler effectively waived his right to testify, and the majority makes no contention that such a finding exists. Rather, it holds that the prosecution satisfied its burden of showing an effective waiver of this right on the basis that a *Curtis* advisement had been given and that Tyler "chose to remain silent when his defense counsel rested, and

never expressed a desire to testify." Maj. op. at 143. By proceeding in this fashion and considering only whether the prosecution met its burden of establishing a prima facie case of waiver and whether the defendant presented evidence to rebut such a finding, the majority holds, contrary to the requirement that we set forth in *Curtis* and subsequently acknowledged in *Roelker*, that a trial judge need not make an on-the-record determination that a defendant voluntarily, knowingly, and intentionally waived his right to testify at trial. There is no support for this leap in our previous case law.

## II

I also disagree with the majority's holding that the prosecution presented a prima facie case of waiver by establishing that the defendant received a *Curtis* advisement and never expressed a desire to testify. *"Prima facie* evidence is evidence sufficient to establish a given fact and which, if not rebutted or contradicted, will remain sufficient." *People v. Anadale,* 674 P.2d 372, 373 n. 3 (Colo.1984); *accord, e.g., People v. Afentul,* 773 P.2d 1081, 1084 (Colo. 1989). What I said in dissent in *Roelker* is even more true of the skeletal evidence on which the majority constructs a prima facie case of waiver here:

> The majority constructs a waiver from the defendant's silence in the face of the announcements by defense counsel and the court that no evidence would be presented on behalf of the defendant. This is inconsistent with the settled law that courts indulge every reasonable presumption against waiver of fundamental constitutional rights. *See Johnson v. Zerbst,* 304 U.S. [458,] 464, 58 S.Ct. [1019,] 1023, [82 L.Ed. 1461 (1938) ]; *Curtis,* 681 P.2d at 514. Waiver of the fundamental right to testify, which is personal to the defendant, cannot be in-

---

2. This characterization was based on a statement made by the trial judge that " 'the record should reflect that [defense counsel] advised the court at a bench conference after the People had rested that he and the defendant elected not to present any testimony.' " *Roelker,* 804 P.2d at

1338. In my dissent in *Roelker* I took the position, which I continue to believe to be correct, that this statement cannot be read as a " 'determination,' explicit or implicit, that the defendant voluntarily and understandingly waived his right to testify." *Id.* at 1342.

ferred from silence in the face of a declaration by defense counsel that the right has been waived. *Compare Palmer [v. People],* 680 P.2d [525,] 527 [ (Colo. 1984) ] (a record of silence by the defendant when defense counsel asserts that the defendant will not testify is insufficient to demonstrate waiver under *Curtis*) *with People v. Fonda,* 712 P.2d 1067, 1069 (Colo.App.1985) (trial court's questioning of both defense counsel and the defendant, on the record, to determine if waiver of the right to testify is knowing, voluntary and intentional satisfies *Curtis*). This record contains no competent evidence to support a finding that the defendant voluntarily, knowingly and intentionally waived the fundamental constitutional right to testify on his own behalf.

*Roelker,* 804 P.2d at 1342.

### III

Additionally, based on the absence of any factual finding by the trial court as to whether Tyler made a voluntary, knowing, and intentional waiver, I assume it to be implicit in the majority opinion that the effectiveness of a defendant's waiver is an issue that may be raised in a post-trial motion and resolved in a subsequent evidentiary hearing. This, however, was one of the specific consequences that we sought to avoid in *Curtis* when we set forth the requirement that trial judges must advise defendants on the record as to their right to testify and must determine the effectiveness of any purported waiver of this right. *See Curtis,* 681 P.2d at 515 (in requiring an on-the-record inquiry and determination concerning the waiver of the right to testify to avoid the potential that the validity of a waiver could not be proved at a later hearing because of the passage of time and defects in memories as to what a defendant had been told, we stated that "[t]he alternative not only increases the chance of error, but is wasteful of judicial resources as well."). This reinforces my view that the direction taken by the court today is ill advised.

Because I believe that our reasoning in *Curtis* was based on sound principles, I cannot agree with the majority's disposition of the waiver issue in this case. I dissent and would reverse the judgment of the court of appeals and remand the case for a new trial.

KIRSHBAUM, J., joins parts I and III of this dissent.