The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

James RUDNICK, Defendant–Appellant.

No. 92CA1247.

Colorado Court of Appeals,
Div. IV.

Dec. 30, 1993.

Rehearing Denied Jan. 27, 1994.

Certiorari Denied Aug. 8, 1994.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., A. William Bonner, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Newell & Martens, Steven R. Newell, Denver, for defendant-appellant.

Opinion by Chief Judge STERNBERG.

The defendant, James Rudnick, appeals from a judgment of conviction entered upon a jury verdict finding him guilty of first degree murder, attempted first degree murder, first degree assault, and extreme indifference first degree assault. We affirm.

A traffic altercation took place in the early morning hours between the defendant, who was driving a Jeep, and the victims, the driver and a passenger in a truck. All par-

ties had been drinking. Words and hand gestures were exchanged between the defendant and the occupants of the truck. There was evidence that defendant displayed a handgun following which the victims attempted to withdraw from the confrontation by driving away. Defendant pursued and overtook them, however, and then fired several shots at the truck. The driver of the truck was killed, and the passenger wounded.

Just prior to the incident, the defendant had become embroiled in an argument with his companion which escalated to the point of him ordering her out of his Jeep. Evidence of this dispute was admitted at trial.

## I.

█ Defendant first contends that the trial court erred by admitting into evidence, as part of the *res gestae* of the offense, defendant's conduct and comments during the earlier argument with his passenger. Defendant claims that the argument was not "part and parcel" of the offense and accordingly the testimony was not admissible as *res gestae* evidence or under CRE 404. We disagree.

█ Evidence of independent wrongdoing or bad acts of a defendant is admissible only in limited circumstances and is subject to specific precautions. CRE 404; *People v. Spoto*, 795 P.2d 1314 (Colo.1990). However, such evidence is admissible as part of the *res gestae* of the offense when it occurs "contemporaneously with or is part and parcel of the crime charged." *People v. Czemerynski*, 786 P.2d 1100, 1109 (Colo.1990). If the events leading up to the crime are a part of the overall scenario, the evidence is admissible to help the fact finder understand the context in which the crime occurred. *People v. Lindsey*, 805 P.2d 1134 (Colo.App.1990), *overruled on other grounds*, *People v. Milton*, 864 P.2d 1097 (Colo.1993).

█ *Res gestae* evidence is not subject either to the general rule that excludes evidence of prior criminality or to related procedural requirements. *Williams v. People*, 724 P.2d 1279 (Colo.1986). Therefore, no cautionary instruction is necessary to inform the jury as to the limited purpose for which the

evidence is being admitted or for which the jury may consider it. *See Callis v. People*, 692 P.2d 1045 (Colo.1984); *People v. Jackson*, 627 P.2d 741 (Colo.1981). Rather, the evidence is admissible so long as it is relevant and its probative value is not substantially outweighed by the probability of unfair prejudice to the accused. *People v. Czemerynski, supra.*

█ A trial court's ruling with respect to the reception of evidence will not be disturbed unless a reviewing court finds that the ruling was manifestly arbitrary, unreasonable, or unfair. *See People v. Czemerynski, supra; People v. Jackson, supra.*

Prior to the incident in question, defendant was arguing with his companion. During the argument, defendant was speeding and driving recklessly. He also yelled and cursed at the woman, hit his hand on the dashboard, and slammed on the brakes before ordering her out of the car.

The conduct in question occurred immediately before, and reasonably could be considered part and parcel of, the incident for which defendant was on trial. Evidence of defendant's reckless conduct and angry comments during an argument occurring only minutes before encountering the victims set the stage for and helped to explain his hostile behavior toward the victims.

When, as here, the evidence showed that defendant's angry state of mind earlier in the evening persisted up to and included the time of the shooting, evidence of defendant's behavior and statements during that time were admissible as part of the *res gestae*. We perceive no error in permitting the jury to view the criminal episode in the context in which it happened. *See People v. Lobato*, 187 Colo. 285, 530 P.2d 493 (1975).

█ Defendant asserts, however, that during her testimony describing the argument, the witness made comments that constituted improper attacks upon defendant's character. The witness testified that she had accused defendant of having no friends and that she had refused to get back into his Jeep because she "thought he was crazy." These comments, either standing alone or jointly, do

not rise to the significance of reversible error. As the remarks could not substantially influence the verdict, the error, if any, in admitting them without a limiting instruction, was harmless. *People v. Snook*, 745 P.2d 647 (Colo.1987).

During cross-examination, she described defendant as a "bully," a "cheapskate," a "crazy driver," and indicated that he had forced sex upon her. These comments were elicited by defense counsel during cross-examination and defendant did not move to strike them; thus, any error in admitting the evidence was invited. A defendant may not seek on appeal to be protected from his own actions. *People v. Zapata*, 779 P.2d 1307 (Colo.1989).

We conclude, therefore, that the trial court did not abuse its discretion in admitting the testimony, without a limiting instruction, to demonstrate the entire chain of events which led to the shooting and to explain the setting in which it occurred. *See People v. Czemerynski, supra.*

## II.

Contrary to defendant's next contention, the trial court did not err in refusing to allow defendant's father to testify about a prior unrelated traffic altercation.

In an offer of proof, defense counsel stated that defendant's father would testify about an incident that had occurred 15 years before in which the father was followed by another driver on his way home from work. The father had unsuccessfully attempted to elude the other driver and finally pulled into a police station parking lot. The other driver then got out of his car, pointed a gun at the father, and stated, "I'm going to blow your head off."

Although defendant was not with his father when the incident occurred, he claimed that, because his father had told him about the incident, it was part of his life experience and thus relevant evidence of defendant's state of mind when he encountered the victims in this case. The trial court disagreed, finding the testimony inadmissible on relevancy grounds because it had occurred 15 years earlier, did not involve the defendant

and because, under a CRE 403 analysis, the probative value of the evidence was substantially outweighed by the danger of confusion of the issues and misleading the jury.

Generally, facts which logically tend to prove or disprove the fact in issue or which afford a reasonable inference or shed light upon the matter contested are relevant. However, facts bearing so remotely upon or collateral to the issue that they afford only conjectural inference should not be admitted in evidence. *People v. Botham*, 629 P.2d 589 (Colo.1981).

There is no fixed standard for determining remoteness; therefore, the trial court must consider all the circumstances of the case, the nature of the acts indicated or shown by the evidence offered, and the nature of the crime. *People v. Geller*, 189 Colo. 338, 540 P.2d 334 (1975).

Absent clear proof of an abuse of discretion, the trial court's determination that evidence is too remote to be relevant will not be disturbed on review. *People v. Czemerynski, supra; People v. Borrelli*, 624 P.2d 900 (Colo.App.1980).

Here, the proffered testimony of defendant's father that defendant had heard second-hand the story of a traffic altercation is irrelevant to establish defendant's state of mind in this unrelated incident occurring some 15 years later. Further, the fact that defendant's father was involved in a traffic dispute in 1976 is a collateral issue having only conjectural relevance to defendant's state of mind in 1991. Therefore, we perceive no abuse of discretion in the trial court's decision to exclude the father's testimony.

## III.

We also disagree with defendant's assertion that he was denied the opportunity to select a fair and impartial jury by the time restrictions placed upon counsel to *voir dire* potential jurors.

The purpose of *voir dire* is to determine whether a potential juror has beliefs that would interfere with a defendant's

right to receive a fair and impartial trial. Restrictions on the scope of *voir dire*, however, are within the discretion of the trial court, and the imposition of such restrictions will not be overturned absent an abuse of discretion. *People v. Alexander*, 797 P.2d 1250 (Colo.1990). So long as the *voir dire* examination is conducted in a manner that will facilitate an intelligent exercise of challenges for cause and peremptory challenges, the trial court may reasonably limit the time available in the interests of judicial economy. Crim.P. 24(a); *People v. Rodriguez*, 786 P.2d 472 (Colo.App.1989).

██ Here, the record reflects that each side was allowed one hour and 30 minutes to ask questions of prospective jurors. This time restriction did not include any *in camera* discussions with individual prospective jurors, nor did it include the extensive *voir dire* examination conducted by the court. We conclude that the procedure adopted by the court, including the time restriction placed upon counsel, provided sufficient opportunity to examine the prospective jurors in a manner that would reveal any improper bias or prejudice. The record does not demonstrate that the 90–minute time limit impinged upon defendant's intelligent exercise of challenges; thus, the trial court did not abuse its discretion in imposing that restriction.

## IV.

██ Contending that one juror had been coerced into voting for a guilty verdict by the abusive language, threatening gestures, and psychological pressures exerted by another juror, the defendant argues that the trial court should have granted his motion for new trial. We do not agree.

Defendant filed a post-trial motion for new trial on this ground. In the ensuing hearing, the juror in question testified that another juror became very aggressive, intimidating, demeaning, and belittling toward her. She stated that his manner was domineering and aggressive in that he would lean forward with his hands on the table, "red-faced with angry veins popping out of his forehead." She also said that he accused her of not having the "stomach for first degree" and

called her a "girl" and "weak," but she added that he did not physically threaten or curse any of the jurors. The juror claimed that, because she felt mentally and emotionally abused, she gave in to the coercion and assented to the verdict against her own judgment.

The trial court denied the motion, concluding that the considered judgment of a reasonable juror would not have been affected by the alleged misconduct; thus, the court ruled that the evidence was insufficient to grant a new trial based on juror misconduct.

██ If the validity of a verdict is attacked, CRE 606(b) precludes inquiry into any matter or statement occurring during jury deliberations, the effect of anything upon any juror's mind or emotions as influencing the juror to assent or dissent from the verdict, or the mental processes of jurors in arriving at the verdict. However, the rule allows a juror's testimony to impeach a verdict if there have been external influences on the jury. And, Colorado courts recognize an additional exception, allowing impeachment of the verdict if there has been jury misconduct. *People v. Collins*, 730 P.2d 293 (Colo. 1986); *Wharton v. People*, 104 Colo. 260, 90 P.2d 615 (1939).

██ If the alleged misconduct involves threats or coercion by fellow jurors, the trial court should conduct a hearing to determine whether there is a reasonable possibility that the misconduct affected the verdict to the defendant's detriment. *Wiser v. People*, 732 P.2d 1139 (Colo.1987); *People v. Black*, 725 P.2d 8 (Colo.App.1986).

██ In making this determination, the trial court must apply an *objective* rather than a subjective test. *People v. Black, supra*. Such analysis requires the court (1) to separate proof of the coercive conduct from proof of the effect this conduct had on the minds of the jurors, and (2) to focus its inquiry on the effect such overt misconduct would have had on a *typical* juror. *Wiser v. People, supra*.

██ Therefore, under CRE 606(b) and caselaw interpreting it, the trial court may only consider evidence of *objective* circum-

stances and *overt* coercive acts by other members of the jury; the court may not consider the effect this conduct actually had on the minds of the jurors. *See People v. Staggs,* 740 P.2d 21 (Colo.App.1987).

Allowing impeachment of a verdict only by objective evidence of misconduct is consistent with the goal of CRE 606(b) to protect juror privacy. The objective test is also more likely to enhance the stability of jury verdicts because proof of the overt conduct does not lie exclusively in the consciousness of one juror and therefore is both provable by the testimony of others and subject to contradiction. *See Wiser v. People, supra;* Annot., 39 A.L.R.4th 800 (1985).

■ Pressures exerted upon jurors during deliberations may become so severe that the trial court must necessarily conclude that a typical juror's assent to the verdict would have been the product of such threats; thus, the unanimity of this jury's verdict is vitiated and reversal is required. *See Wharton v. People, supra.* This is not such a case.

Rather, strong argument as occurred here is a real part of jury deliberations; in the heat of juror debate, many kinds of statements may be made which have little effect on the outcome, though when taken out of context may seem damning or absurd. *See People v. Black, supra.*

■ To warrant a new trial, the evidence must reveal more than expressions of frustration, impatience, annoyance, or empty threats. *See People v. Vigil,* 718 P.2d 496 (Colo.1986) (heated argument, even shouting, may be normal part of deliberative process). Although particular conduct is perhaps harsh and inappropriate, it is not prejudicial to the jury's verdict if no reasonable juror would have been affected by it.

Here, the juror's testimony about her feelings of being mentally abused and about her inability to stand up to the other juror's aggressive behavior constituted improper testimony concerning her thought processes and was, therefore, inadmissible under CRE 606(b). *Ravin v. Gambrell By and Through Eddy,* 788 P.2d 817 (Colo.1990). Evidence that psychological intimidation was exerted against the juror, along with the question whether the juror's assent to the verdict actually was coerced, also are within the rule

and, thus, are not competent to impeach the verdict.

Contrary to defendant's claim, the pressure exerted upon the juror here falls short of the level present in *Wharton v. People, supra,* and the level that would warrant a new trial. In *Wharton,* when one juror repeatedly refused to join in a death penalty verdict, the other jurors became abusive in their language, accused the juror of having been "bought off," alleged that the juror perjured himself during *voir dire,* threatened "physical combat," and cursed and swore at the juror. They also continuously followed the juror around the jury room during 27 hours of deliberations, refusing to let him rest and repeatedly haranguing him.

In contrast, the record here reveals no evidence of threats, abuse, or any coercion beyond the verbal, aggressive behavior of one juror. That juror's statements were not accompanied by any act or threat of violence, nor were they made using profane or violent language; rather, they amounted only to heated expressions of temper and a strong opposition to the other juror's views. *See* Annot., 39 A.L.R.4th 800 (1985). Finally, as distinguished from the lengthy jury deliberation in *Wharton v. People, supra,* the jury deliberated for only two and one-half hours.

Under these circumstances, the trial court properly ruled that such pressure is not the type of coercion that justifies impeaching a jury verdict. *See People v. Black, supra.* Because there is no reasonable possibility that the misconduct of the one juror in this case affected the verdict, we uphold defendant's conviction.

V.

We do not agree with defendant that the court erred in not granting a mistrial, that a new trial was warranted by statements made during the prosecution's closing argument, or that this is a case in which cumulative error requires a new trial.

The judgment is affirmed.

JONES and RULAND, JJ., concur.