The PEOPLE of the State of
Colorado, Petitioner,

v.

Marvin GRAY, Respondent.

No. 95SC134.

Supreme Court of Colorado,
En Banc.

June 24, 1996.

Rehearing Denied Aug. 19, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, Paul E. Koehler, Assistant Attorney General, Criminal Enforcement Section, Denver, for Petitioner.

David F. Vela, Colorado State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, for Respondent.

Justice SCOTT delivered the Opinion of the Court.

We agreed to review *People v. Gray*, 899 P.2d 290 (Colo.App.1994), in which the court of appeals reversed the judgment of conviction and remanded for a new trial, concluding that respondent Marvin Gray (defendant) received an inadequate advisement under *People v. Curtis*, 681 P.2d 504 (Colo.1984). The trial court informed the defendant that his prior felony convictions "would be admissible with respect to credibility." The court of appeals held the trial court failed to inform the defendant that his testimony during the substantive phase of the trial with respect to "prior felony convictions would be admissible *only* for purposes of impeachment" and that the People "would still have the burden of proving the prior felony convictions at the habitual offender phase of the trial." *Gray*, 899 P.2d at 291. We granted certiorari to decide:

I. Whether a trial court's failure to advise the defendant, pursuant to *People v. Curtis*, 681 P.2d 504 (Colo.1984), of our

holding in *People v. Chavez,* 621 P.2d 1362 (Colo.), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981), that any admissions of prior felony convictions by the defendant can only be considered by the jury in assessing credibility, not as substantive proof of the prior convictions, renders a criminal conviction invalid.

II. Whether *Curtis* advisements are required.

On the record before us, we see no basis for finding reversible error, and therefore, we reverse the judgment of the court of appeals and remand to that court with directions that it return the case to the trial court with instructions to reinstate the judgment of convictions.

## I

Defendant was convicted of aggravated robbery[1] and attempted aggravated robbery[2] and sentenced as a habitual offender.[3] At the close of the People's case and outside the presence of the jury, the trial court informed the defendant of his right to testify. We set forth a portion of that advisement:

THE COURT: The People have rested and we're now on the part of the case [where Mr. Gray] you, can put on some evidence if you want. Included among that evidence is you yourself of course have the right to testify as a witness in this case. Do you understand that?

THE DEFENDANT: Yes.

. . . .

THE COURT: All right. Now, no one can keep you from testifying and no one

can make you testify, and the decision whether to testify is yours and yours alone. I'm sure you and Mr. Johnson have discussed at some length whether or not you want to testify, I'm sure he has given you advice on that point and good advice?

THE DEFENDANT: Yes.

THE COURT: Nonetheless the decision is yours. Now, if you do testify you should note that the District Attorney will be able to cross-examine you about the facts of this particular case, and if you've been previously convicted of a felony, the District Attorney will be entitled to ask you about your previous convictions.

I understand from my review of the file that there is some issue as to whether or not you have been convicted of six prior felonies, at least that's the allegation with respect to the other part of this case. As a result of that, I anticipate that if you testify the District Attorney will inquire of you as you are testifying about the existence of these six prior felonies.

The *six prior felonies would be admissible with respect to credibility.* The District Attorney can in fact talk about them. Are you aware of all that?

(Emphasis added.)[4]

## II

### A

In *People v. Curtis,* 681 P.2d 504, 512 (Colo.1984), we held that a defendant's right to testify is a fundamental right that can only be surrendered by a waiver "tested

1. § 18–4–302(1)(b), 8B C.R.S. (1986).

2. § 18–2–101, 8B C.R.S. (1986 & 1995 Supp.).

3. § 16–13–101, 8B C.R.S. (1986).

4. The advisement continued briefly as follows:
THE COURT: Okay. Now, what I need to know is whether or not you and Mr. Johnson have indeed talked about this issue of whether or not to testify, and you can just simply say yes or no.
THE DEFENDANT: Yes, we have.
THE COURT: Okay. And whether you personally have made a decision whether to testify or not, and have you done that?
THE DEFENDANT: Yes.

THE COURT: And are you willing or are you going to testify in this case?
THE DEFENDANT: No, ma'am.
THE COURT: All right. Are you making that decision yourself?
THE DEFENDANT: Yes.
THE COURT: And no one is forcing you one way or the other, this is a voluntary decision?
THE DEFENDANT: Yes, it is.
THE COURT: Do you have any questions about this, have I explained this clearly enough to you?
THE DEFENDANT: Yes.
THE COURT: Is what I'm saying consistent with what Mr. Johnson has already told you?
THE DEFENDANT: Yes.

by the same constitutional standards applicable to the waiver of the right to counsel." *See also People v. Milton,* 864 P.2d 1097, 1098–99 (Colo.1993). Similarly, in *Rock v. Arkansas,* the United States Supreme Court held that "[t]he right to testify on one's own behalf at a criminal trial ... is one of the rights that 'are essential to due process of law in a fair adversary process.' " 483 U.S. 44, 51, 107 S.Ct. 2704, 2708–09, 97 L.Ed.2d 37 (1987) (quoting *Faretta v. California,* 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975)). The right to testify is bottomed on the Due Process Clause of the Fourteenth Amendment, the Compulsory Process Clause of the Sixth Amendment, and the Fifth Amendment's privilege against self-incrimination. *Id.* at 49–53, 107 S.Ct. at 2707–10. The Court noted:

> Logically included in the accused's right to call witnesses whose testimony is "material and favorable to his defense," *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867 [102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193] (1982), is a right to testify himself, should he decide it is in his favor to do so. In fact, the most important witness for the defense in many criminal cases is the defendant himself.

*Id.* at 52, 107 S.Ct. at 2709.

Under *Curtis,* 681 P.2d at 514, in order to determine whether a defendant's waiver of the constitutional right to testify is voluntary, knowing, and intelligent, a trial court should advise the defendant outside the presence of the jury

> that he has the right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him, that if he has been convicted of a felony the prosecutor will be entitled to ask him about it and thereby disclose it to the jury, and that if the felony conviction is disclosed to the jury then the jury can be instructed to consider it only as it bears upon his credibility. In connection with the privilege against self-incrimination, the defendant should also be advised that he has a right not to testify and that if he

does not testify then the jury can be instructed about that right.

(Footnote omitted.) [5] *Curtis* requires that a trial court ensure a defendant's waiver of his or her right to testify is intelligently and competently made. *Roelker v. People,* 804 P.2d 1336, 1338 (Colo.1991).

Generally, "courts indulge every reasonable presumption against waiver." *Curtis,* 681 P.2d at 515. However, if a trial court applies correct standards, makes necessary findings to establish a waiver, and evidence exists to support those findings, then the trial court's findings of waiver will not be disturbed on review. *Id.; see also Roelker,* 804 P.2d at 1339 ("A lower court's determination that a defendant effectively waived his right to testify will therefore be upheld if it is supported by competent evidence."). Despite these broad considerations, we have never precisely articulated the minimum requirements of an effective *Curtis* waiver. *Milton,* 864 P.2d at 1102 (Vollack, J., dissenting); *see Tyler v. People,* 847 P.2d 140, 143 (Colo.1993); *see also Roelker,* 804 P.2d at 1339 ("*Curtis* did not decide what the minimum requirements are to establish a waiver of a defendant's right to testify in his own defense."). Rather, rejecting a reading of *Curtis* as creating a fixed advisement, we specifically stated "that there is no prescribed litany or formula which must be followed in advising the defendant of his right to testify." *People v. Chavez,* 853 P.2d 1149, 1152 (Colo.1993) (*Chavez II*); *see also Milton,* 864 P.2d at 1099; *Roelker,* 804 P.2d at 1339 ("We reject Roelker's argument that the dictum of *Curtis* mandates a rigid requirement that the trial court question the defendant to determine whether his waiver is truly voluntary.").

Failure to give a proper *Curtis* advisement, however, constitutes reversible error. *Milton,* 864 P.2d at 1100; *see also Curtis,* 681 P.2d at 515 (allowing defendant *Curtis* a new trial). *But see Tyler,* 847 P.2d at 143 (noting that, although an effective waiver of the right to testify must be voluntary, knowing, and intentional, "it is not re-

---

**5.** In *Curtis,* we did "not address the situation present in that narrow class of cases where a prior felony conviction is an element of the crime charged." *Curtis,* 681 P.2d at 514 n. 12.

versible error per se when the waiver does not appear on the record").

## B

In *Chavez II* and *Milton,* the defendants were not informed that their prior felony convictions could be considered for the limited purpose of impeaching their credibility. *Milton,* 864 P.2d at 1100; *Chavez II,* 853 P.2d at 1152. In both cases, the defendants' convictions were reversed. In *Chavez II,* we stated:

By its silence, the trial court left the impression that the prior convictions could be used as substantive proof for the habitual criminal phase of the trial. Clearly the inference raised by the trial court's incomplete advisement is wrong. If Chavez chose to testify, he would be entitled to an instruction explaining to the jury that evidence of his prior felonies was admitted only for the limited purpose of impeaching his credibility. . . . Since the trial court gave the defendant no explanation of these important, but technical, legal concepts, Chavez reasonably could have inferred that the prosecution would be relieved of its burden to prove his prior felonies if he testified and were forced to acknowledge his prior felony convictions. The inadequate advisement denied Chavez of an opportunity to make a voluntary, knowing, and intelligent waiver of his right to testify.

*Chavez II,* 853 P.2d at 1152 (footnote and citation omitted).

In *Milton,* the advisement failed to adequately inform the defendant of "the salient consequences of testifying and to provide accurate information concerning those consequences." 864 P.2d at 1101. The advisement did not inform the defendant that the use of his testimony regarding prior convictions was limited to impeachment. *See Milton,* 864 P.2d at 1101; *see also Chavez II,* 853 P.2d at 1152. Likewise, the trial court failed to advise the defendant that, if he chose not to testify, the jury would be instructed regarding the right against self-incrimination. *See Milton,* 864 P.2d at 1100.

A "defendant's statement that he did not want to testify is evidence of a voluntary waiver. . . ." *Chavez II,* 853 P.2d at 1153. However, "[a]bsent an adequate advisement, a defendant's waiver of the right to testify, though perhaps voluntary, cannot be knowing and intelligent." *Milton,* 864 P.2d at 1100 (citing *Chavez II,* 853 P.2d at 1153). Thus, to be effective, a waiver of the right to testify must " 'provide assurance that defendant understood the constitutional right to testify and the consequences of testifying.' " *Milton,* 864 P.2d at 1100 (quoting *People v. Milton,* No. 90CA1474, slip op. at 2–3 (Colo. App. July 2, 1992)). A satisfactory *Curtis* advisement should inform the defendant that the defendant has the right to testify or not to testify; the decision to testify is personal; the prosecution would be able to cross-examine the defendant and thus prior felony convictions could be disclosed to the jury; the limited purpose for which such prior felony convictions would be admitted; and, the consequences of testifying. *See Chavez II,* 853 P.2d at 1152.

Here, the trial judge advised the defendant that his testimony regarding prior felony convictions "would be admissible with respect to credibility." The defendant argues, and the court of appeals properly noted, a better advisement would have stated his "prior felony convictions would be admissible *only* for purposes of impeachment. . . ." *Gray,* 899 P.2d at 291. While we agree that a more clear and full advisement could have easily been given, we do not accept defendant's conclusion that the advisement given constitutes reversible error. Prior to the trial court's advisement, the defendant's attorney informed the trial court that he had already counseled his client concerning his right to testify. Defendant acknowledged being so informed and advised by his attorney.

Thus, unlike *Milton,* this is not a case in which the defendant remained silent in the face of defense counsel's declaration that defendant would not testify. Nor is this case identical to *Chavez II* where "[n]o explanation was given . . . [the defendant] of the limited purpose for which such felonies could be admitted." *Chavez II,* 853 P.2d at 1152. To the contrary, defendant was given the

opportunity, on the record, to exercise or waive his right to testify and, after consultation with his attorney, he affirmatively waived his right. The trial court did not mislead defendant; it actively engaged defendant in a colloquy regarding his rights, and as a consequence, there is sufficient evidence to support the trial court's determination that defendant's waiver was effective. Because competent evidence supports its determination that defendant effectively waived his right to testify, we will not disturb the trial court's findings on review. *See Roelker,* 804 P.2d at 1339. On this record, we hold that defendant's waiver was, in fact, knowingly and intelligently made. Thus, we conclude the judgment of the court of appeals should be reversed.

### III

■ The court of appeals also concluded that the defendant must be informed "that the prosecution has a continuing obligation to prove the prior felony convictions by separate independent evidence with respect to the habitual criminal counts." *Gray,* 899 P.2d at 293. We disagree.

■ In *People v. Chavez,* 621 P.2d 1362, 1367 (Colo.), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981) (*Chavez I*), we concluded that the prosecution is required to prove a defendant's prior convictions beyond a reasonable doubt with evidence independent of the defendant's testimony. We also emphasized that a trial court should instruct "the jury to consider any admissions of prior convictions elicited from the defendant in connection with his testimony on the substantive offense *only* as they affect his credibility...." *Id.*

Based on *Chavez I, Curtis,* and *Chavez II,* the court of appeals improperly concluded that, in those cases where habitual criminal charges are pending,

> the record [must] affirmatively show that the defendant was advised and understood (1) the limitation on the use of the prior felony convictions to the issue of defendant's credibility with respect to the substantive charges; and (2) that the prosecution has a continuing obligation to prove the prior felony convictions by separate independent evidence with respect to the habitual criminal counts. The latter requirement was not contained in *Curtis* as that case had no habitual criminal counts but, in our view, has been imposed by both *Chavez* I and *Chavez* II.

*Gray,* 899 P.2d at 293.[6] By including the latter requirement, the court of appeals improperly engrafted an additional element to the existing *Curtis* advisements.

In *Chavez I,* we disapproved of a trial court's ruling that "impeachment evidence of the defendant's prior convictions elicited or offered by the prosecution during the trial of the substantive offense *could* be used for substantive purposes in the habitual criminal trial." *Chavez I,* 621 P.2d at 1364 (emphasis added). *Chavez I* focused on the appropriate use of prior convictions evidence during the habitual criminal phase. The court sought to cure the "intolerable tension" created by the habitual criminal statute. *See id.* at 1366–67. We resolved the dilemma by concluding that a defendant's admissions of prior convictions could be used to impeach credibility, but not as substantive evidence to prove the elements of habitual criminal status. *See id.*

Under *Curtis,* a defendant must be informed that his or her prior convictions may

---

**6.** The court of appeals noted that, in *Chavez II,* we also granted certiorari to determine whether the pre-*Curtis Chavez I* decision imposed an additional advisement requirement for cases involving habitual criminal charges. *Chavez II,* 853 P.2d at 1152 n. 6; *see also Gray,* 899 P.2d at 293. However, certiorari was dismissed because both parties conceded that, under the facts of that case, *Chavez I* required no additional advisement. *Chavez II,* 853 P.2d at 1152 n. 6. The court of appeals concluded that the dismissal did not detract "from the otherwise clearly enunciated requirements set forth in *Chavez I* and *Chavez*

*II." Gray,* 899 P.2d at 293. Since the *Chavez I* decision, however, other panels of the court of appeals have concluded, either explicitly or implicitly, that the defendant need not be informed of the prosecution's continuing burden of proof in the habitual criminal phase. *See, e.g., People v. Windsor,* 876 P.2d 55, 56–57 (Colo.App.1993); *People v. Boehmer,* 872 P.2d 1320, 1322–23 (Colo.App.1993); *People v. Turley,* 870 P.2d 498, 503 (Colo.App.1993); *People v. Clouse,* 859 P.2d 228, 231–32 (Colo.App.1992); *People v. Allaire,* 843 P.2d 38, 41 (Colo.App.1992). *But see People v. Tafoya,* 654 P.2d 1342, 1343 (Colo.App.1982).

be considered only to impeach his or her credibility. *Chavez II*, 853 P.2d at 1152; *Curtis*, 681 P.2d at 515. This advisement adequately informs the defendant about the permissible use of prior convictions in connection with his or her constitutional right to testify. An advisement regarding the prosecution's continuing duty to prove a defendant's prior convictions merely repeats, in a slightly different form, the instruction concerning the permissible use of prior convictions. Requiring an extra advisement increases the chances of trial court error without any additional benefit to the defendant. In our view, an extra advisement unnecessarily burdens a trial court without further informing the defendant.

## IV

Implicit in our analysis is an affirmation of the continuing viability of *Curtis* advisements. We now make clear the ardor by which we follow our precedent first announced in *Curtis*. Ensuring a voluntary, knowing, and intelligent waiver of the fundamental right to testify requires the continuing participation of the trial court. In our view, the benefit derived is sufficient to support the continued validity of *Curtis*, without placing an overwhelming burden on our trial judges.

We believe it is fitting to require trial courts to determine whether a defendant's waiver of such a fundamental right is effective. Certainly, so long as police officers risk life and limb during the apprehension of suspects to provide *Miranda* warnings, it is not onerous for trial judges to provide defendants with the requisite *Curtis* advisement from the relative comfort of a courtroom. It is inconceivable that we would require more from our law enforcement authorities than judicial officers.

Moreover, although the validity of *Curtis* advisements may seem heavily litigated,[7] creating a record of such a waiver facilitates appellate review. Without a *Curtis* require-

ment, waiver issues would merge into ineffective assistance of counsel claims. Post conviction proceedings would still abound, but no record would exist to corroborate a defendant's allegations. In light of the fundamental nature of the right to testify, we favor review of a waiver of the right to testify with a record, not without a record. Considering the foregoing, we decline the prosecution's invitation to overrule *Curtis* and its progeny.

## V

Accordingly, we reverse the judgment of the court of appeals and remand this case to that court with directions that it return the case to the trial court for reinstatement of the judgment of convictions against defendant.

LOHR, J., concurs in part and dissents in part, and KIRSHBAUM and MULLARKEY, JJ., join in the concurrence and dissent.

Justice LOHR concurring in part and dissenting in part:

This case presents the question of whether a trial court adequately advised a criminal defendant regarding his constitutional right to testify in his own defense. The defendant, Marvin Gray, was convicted of aggravated robbery[1] and attempted aggravated robbery,[2] and was sentenced as a habitual offender[3] to concurrent life sentences. Gray did not testify in his own defense during the trial. The court of appeals reversed the convictions and remanded the case for a new trial, holding that the trial court did not adequately advise Gray concerning his right to testify. *People v. Gray*, 899 P.2d 290, 291 (Colo.App.1994).

On certiorari review in this court, the majority reaffirms our decision in *People v. Curtis*, 681 P.2d 504 (Colo.1984), that a defendant must be advised by the trial court concerning his constitutional right to testify.

7. The record does not contain evidence concerning the number of nonappealed, adequate trial court *Curtis* advisements.

1. § 18–4–302(1)(b), 8B C.R.S. (1986).

2. § 18–2–101, 8B C.R.S. (1986); § 18–4–302, 8B C.R.S. (1986).

3. § 16–13–101, 8A C.R.S. (1986).

Maj. op. at 793. Contrary to the court of appeals' decision however, *Gray,* 899 P.2d at 293, the majority also holds that the *Curtis* advisement need not be expanded to explain its practical effect in the habitual criminal context. Maj. op. at 792–93. The majority then reverses the court of appeals and holds that the trial court's advisement in this case satisfied the *Curtis* advisement requirements. Maj. op. at 791–92, 793. I agree with the majority's reaffirmation of *Curtis* and with its holding that the *Curtis* advisement need not be expanded in habitual criminal cases. However, the trial court's advisement in this case did not include an essential element of the advisement outlined in *Curtis:* that the defendant's testimony concerning prior felony convictions could be considered by the jury *only* with regard to credibility. This element is particularly critical in a habitual criminal case, where the prosecution has a continuing burden in the habitual criminal phase of the trial to prove a defendant's prior convictions with evidence independent of the defendant's testimony that was elicited on cross-examination. I therefore respectfully dissent to the majority's conclusion that the advisement was adequate and agree with the court of appeals that Gray's convictions should be reversed and his case remanded for a new trial. *See Gray,* 899 P.2d at 291.

## I.

After the prosecution rested its case, the trial court orally advised Gray regarding his right to testify. The trial court began its advisement by informing Gray that "all [*Curtis* ] really means is I have to talk to you about whether you want to testify or not." The trial court then advised Gray regarding some of the implications of testifying, noting in relevant part:

> Now, if you do testify you should note that the District Attorney will be able to cross-examine you about the facts of this particular case, and if you've been previously convicted of a felony, the District Attorney

will be entitled to ask you about your previous convictions.

> I understand from my review of the file that there is some issue as to whether or not you have been convicted of six prior felonies, at least that's the allegation with respect to the other part of this case. As a result of that, I anticipate that if you testify the District Attorney will inquire of you as you are testifying about the existence of these six prior felonies.

> The six prior felonies would be admissible with respect to credibility. The District Attorney can in fact talk about them.

In response to the court's inquiries, Gray told the judge that he had no questions regarding the advisement and acknowledged that the advisement was consistent with what his attorney had explained.

## II.

The majority reaffirms today that criminal defendants have a constitutional right to testify in their own defense pursuant to the Due Process Clause, U.S. Const. amend. XIV, § 1; the Compulsory Process Clause, U.S. Const. amend. VI; and the privilege against self-incrimination, U.S. Const. amend. V.[4] *See* maj. op. at 790 (citing *Rock v. Arkansas,* 483 U.S. 44, 51, 107 S.Ct. 2704, 2708–09, 97 L.Ed.2d 37 (1987) (quoting *Faretta v. California,* 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975))); *see also Curtis,* 681 P.2d at 509–11 & n. 7. A criminal defendant's right to testify is "of such compelling importance that it is excluded from the group of constitutionally based rights that defense counsel can elect to exercise or waive on the behalf of the accused." *Curtis,* 681 P.2d at 512 (footnote omitted). Instead, a defendant's waiver of the right to testify "must be voluntary, knowing and intentional," and courts must "indulge every reasonable presumption against waiver." *Id.* at 514.

In *People v. Curtis,* we sought to ensure that criminal defendants' waivers of the right

4. Counterparts of the United States Constitution's Due Process Clause, Compulsory Process Clause, and the Fifth Amendment privilege against self incrimination are found, respectively, in Article II, § 25; Article II, § 16; and Article II, § 18, of the Colorado Constitution. We have relied on Colorado's constitution as well as the federal constitution in recognizing a criminal defendant's right to testify. *Curtis,* 681 P.2d at 510–11 n. 7.

to testify were voluntary, knowing, and intentional by describing the essential elements for an adequate trial court advisement concerning the right to testify. *Id.* at 514. In relevant part, we required a trial court to emphasize to a criminal defendant that any evidence of prior convictions elicited on cross-examination could be considered by the jury *only* with regard to the defendant's credibility:

> A trial court exercising appropriate judicial concern for the constitutional right to testify should seek to assure that waiver is voluntary, knowing and intentional by advising the defendant outside the presence of the jury that he has a right to testify... and that if [a prior] felony conviction is disclosed to the jury [on cross-examination] then the jury can be instructed to consider it *only* as it bears upon his credibility.

*Id.* (emphasis added and footnote omitted). We have reiterated the essential elements of an adequate advisement, as outlined in *Curtis,* on numerous occasions. *People v. Milton,* 864 P.2d 1097, 1099 (Colo.1993) (quoting *Curtis,* 681 P.2d at 514); *People v. Chavez (Chavez II),* 853 P.2d 1149, 1151 (Colo.1993) (same); *Tyler v. People,* 847 P.2d 140, 142 (Colo.1993) (same); *Roelker v. People,* 804 P.2d 1336, 1338 (Colo.1991) (same); *People v. Mozee,* 723 P.2d 117, 122 (Colo.1986) (same); *see also Milton,* 864 P.2d at 1101 ("[A criminal defendant] is also to be advised, however, that the jury can be instructed to consider any such felonies *only* for purposes of impeachment." (emphasis added)).

We applied the *Curtis* advisement requirements in *Chavez II.* In *Chavez II,* we noted that the trial court "told the defendant that the prosecution would be allowed to cross-examine him, and that his four prior felony convictions could be disclosed to the jury if he chose to testify," but "[n]o explanation was given [the defendant] of the limited purpose for which such felonies could be admitted." 853 P.2d at 1152. We held that the advisement was inadequate to support a voluntary, knowing, and intentional waiver of the defendant's constitutional right to testify:

> [The defendant] was not informed that, if he testified, his prior felony convictions could be considered *only* to impeach his credibility. By its silence, the trial court left the impression that the prior convictions could be used as substantive proof for the habitual criminal phase of the trial. Clearly the inference raised by the trial court's incomplete advisement is wrong. If [the defendant] chose to testify, he would be entitled to an instruction explaining to the jury that evidence of his prior felonies was admitted *only* for the limited purpose of impeaching his credibility. Further, the prosecution at all times had the burden to prove the defendant's prior felonies at the habitual criminal phase of the trial. Since the trial court gave the defendant no explanation of these important, but technical, legal concepts, [the defendant] reasonably could have inferred that the prosecution would be relieved of its burden to prove his prior felonies if he testified and were forced to acknowledge his prior felony convictions. The inadequate advisement denied [the defendant] of an opportunity to make a voluntary, knowing, and intelligent waiver of his right to testify.

*Id.* (citations and footnote omitted) (emphasis added). In other words, the trial court erred by failing to inform the defendant that any information regarding the defendant's prior convictions that would be elicited if the defendant chose to testify could be used *only* for impeachment purposes. By omitting the instruction on the limited permissible use of such information, the court left the defendant with the incorrect impression that the defendant's testimony regarding prior convictions could be used as substantive proof in the habitual criminal phase of the trial. *Id.* The omitted limited-use instruction, and resultant impression that the defendant's testimony regarding prior convictions could be used for purposes other than impeachment, jeopardized the defendant's understanding of his constitutional right to testify and prevented a voluntary, knowing, and intentional waiver of that right. *Id.*

Although *Curtis* does not require trial courts to read the preferred advisement in that opinion to defendants verbatim, the majority is incorrect in determining that *Curtis*

does not create a "fixed advisement" because "we have never precisely articulated the minimum requirements of an effective *Curtis* waiver." Maj. op. at 790 (citing *Milton*, 864 P.2d at 1102 (Vollack, J., dissenting)). First, our opinion in *Curtis* does outline the minimum elements of an adequate advisement regarding a defendant's right to testify. 681 P.2d at 514. The majority cites *Chavez II, Milton*, and *Roelker* for the proposition that " 'there is no prescribed litany or formula which must be followed in advising the defendant of his right to testify.' " Maj. op. at 790 (quoting *Chavez II*, 853 P.2d at 1152). In fact, we held in *Chavez II*:

> [T]here is no prescribed litany or formula which must be followed in advising the defendant of his right to testify. *However, the advisement given must include the Curtis elements* and avoid misleading a defendant about the consequences of a decision not to testify.

853 P.2d at 1152 (emphasis added); *see also id.* at 1151 ("a trial court *must* advise a criminal defendant" of the *Curtis* advisement elements (emphasis added) (quoting *Curtis*, 681 P.2d at 514)). Similarly, we held in *Milton*:

> *Curtis* does not prescribe a "litany or formula which must be followed in advising the defendant of his right to testify." *The advisement, nevertheless, must include the Curtis elements.*

864 P.2d at 1099 (citations omitted) (emphasis added) (quoting *Chavez II*, 853 P.2d at 1152). If any doubt remained, we clarified our intentions later in *Milton*:

> Although *Curtis* prescribes no formula, *it does specifically identify the elements of the requisite advisement.* And, as earlier noted, *we have repeatedly stated that the advisement contemplated by Curtis is required.*

*Id.* at 1100 (citations and footnote omitted) (emphasis added); *accord Roelker*, 804 P.2d at 1338 ("*Curtis requires* that the trial court advise the defendant" of the *Curtis* advise-ment elements (emphasis added) (citing *Curtis*, 681 P.2d at 514)); *Tyler*, 847 P.2d at 142 (same).

Second, the majority misapprehends the distinction between minimum requirements for an adequate trial court advisement and the essential elements for an effective waiver by the defendant. Both *Roelker* and *Tyler* centered around whether our opinion in *Curtis* mandated minimum requirements for an effective *defendant's waiver*, and neither case questioned the principle that our opinion in *Curtis* outlined the essential elements for a proper *trial court advisement* regarding a defendant's right to testify. *Tyler*, 847 P.2d at 142–43; *Roelker*, 804 P.2d at 1338–39. Obviously, a trial court could issue a perfect advisement under *Curtis* and yet a defendant's waiver would be inadequate if, for example, the defendant responded to the court's advisement in a manner demonstrating a lack of understanding of some essential element of the advisement. The majority confuses the two issues of a defendant's waiver and a trial court's advisement, and then merges the two concepts to determine that this court has never declared the minimum requirements for an effective trial court advisement regarding a defendant's right to testify. *See* maj. op. at 790–91. In doing so, the majority does not recognize the essential requirements for an adequate trial court advisement that we first outlined in *Curtis*, 681 P.2d at 514, and subsequently reaffirmed without qualification in *Mozee*, 723 P.2d at 122, *Roelker*, 804 P.2d at 1338, *Tyler*, 847 P.2d at 142, *Chavez II*, 853 P.2d at 1151, 1152, and *Milton*, 864 P.2d at 1099, 1100.

## III.

The trial court's *Curtis* advisement was inadequate in this case because the trial court failed to advise Gray that testimony elicited on cross-examination regarding Gray's prior felony convictions would be admissible *only* [5] with regard to credibility, and

---

5. I do not mean to suggest that a limited-use instruction must necessarily include the word "only." Other phrases could adequately communicate the same idea. For example, the trial court could inform the defendant that evidence of a prior felony conviction may be considered in determining the defendant's credibility *and for no other purpose.* It is likely that the word *only* is used so frequently in cases interpreting *Curtis* because it is used in *Curtis* itself and because it is

thus did not inform Gray of one of the essential elements of an adequate *Curtis* advisement. *Curtis,* 681 P.2d at 514; *accord Milton,* 864 P.2d at 1099, 1100; *Chavez II,* 853 P.2d at 1151, 1152; *Tyler,* 847 P.2d at 142; *Roelker,* 804 P.2d at 1338; *Mozee,* 723 P.2d at 122. The majority notes that "[i]n *Chavez II* and *Milton,* the defendants were not informed that their prior felony convictions could be considered for the *limited* purpose of impeaching their credibility," and approves of those holdings because the advisements "did not inform the defendant that the use of his testimony regarding prior convictions was *limited* to impeachment." *See* maj. op. at 791 (emphasis added). The majority then reaffirms that a "satisfactory *Curtis* advisement should inform the defendant [of] ... the *limited* purpose for which such prior felony convictions would be admitted," because "[u]nder *Curtis,* a defendant *must* be informed that his or her prior convictions may be considered *only* to impeach his or her credibility." Maj. op. at 791, 792 (emphasis added). In this case, the trial court failed to instruct Gray that information regarding felony convictions elicited on cross-examination could be used *only* for impeachment purposes. This deficiency was exacerbated by the trial court's statement to Gray that the district attorney could "in fact talk about" the prior convictions.

Although the majority agrees that a "better advisement would have stated [that Gray's] 'prior felony convictions would be admissible *only* for purposes of impeachment,'" maj. op. at 791 (quoting *Gray,* 899 P.2d at 291), the majority concludes that this case is unlike *Chavez II* "where '[n]o explanation was given ... [the defendant] of the limited purpose for which such felonies could be admitted,'" maj. op. at 791 (quoting *Chavez II,* 853 P.2d at 1152). However, the advisement given to Gray that "felonies would be admissible with respect to credibility" provided him with no more information about other possible uses of his testimony than did the trial court's silence on permissible use in *Chavez II.*

employed in the pattern jury instruction given on this issue. *See Curtis,* 681 P.2d at 514; CJI–

Having acknowledged the inadequacy of the trial court's *Curtis* advisement in this case, *see* maj. op. at 791–92, the majority is forced to rely on what is in effect a harmless error analysis by accepting at face value defense counsel's assertion "that he had already counseled [Gray] concerning his right to testify" and defendant's acknowledgment that he had been "so informed and advised by his attorney." Maj. op. at 791. This analysis undermines our holding in *Curtis* that appellate courts can be certain that a defendant's waiver of his right to testify was voluntary, knowing, and intentional only after reviewing an on-the-record advisement by the trial court containing certain essential elements. *See* 681 P.2d at 511–12, 514–15; *see also, e.g., Mozee,* 723 P.2d at 122, 124–25 ("[W]e perceive a real risk that without a judicial advisement [on the record], the truly personal considerations incident to a defendant's decision not to testify will be unduly minimized by counsel in an effort to assure the best chance of acquittal."). Furthermore, the majority's apparent reliance on Gray's statement that he was adequately "informed and advised by his attorney," maj. op. at 791, is troubling considering that *Curtis* is premised on the likelihood that a criminal defendant does not understand the scope of the right to testify in his own defense or the consequences of asserting or waiving that right. Moreover, the majority's apparent reliance on the representation made by Gray's attorney to the trial court that he had counseled his client concerning his right to testify is questionable in view of Gray's statement that the trial court's inadequate advisement was consistent with his attorney's explanation of a defendant's right to testify under *Curtis. See* maj. op. at 789 n. 4 (colloquy between trial court and Gray). In sum, the *Curtis* advisement given to Gray was fatally defective because he was not explicitly told that the use of his testimony concerning prior felonies would be limited to impeachment.

## IV.

In Part III of its opinion, the majority holds that in a habitual criminal case it is

Crim. 4:07.

unnecessary to advise the defendant that the prosecution has a continuing obligation to prove the defendant's prior felony convictions with independent evidence even if the defendant testifies and admits those convictions on cross-examination. Maj. op. at 792–93. The majority reasons, maj. op. at 793, that this information is adequately imparted to the defendant by the portion of the *Curtis* advisement specifying that if the defendant discloses felony convictions to the jury in the course of cross-examination during the guilt phase of the trial "then the jury can be instructed to consider it only as it bears upon his credibility." *Curtis*, 681 P.2d at 514; *see also Milton*, 864 P.2d at 1101 ("One of the purposes of *Curtis* is to eliminate speculation as to what a particular defendant might believe to be the salient consequences of testifying and to provide accurate information concerning those consequences."). I agree. However, in the present case the defendant was not advised that evidence of prior felony convictions supplied by him on cross-examination could be used *only* in reference to his credibility. Our decision not to expand *Curtis* and require a more detailed explanation specifically tailored to habitual criminal cases should not obscure the absence of an essential element of the *Curtis* advisement in the present case, and serves to emphasize the central importance of the omitted word "only" in the advisement given to Gray.

## V.

For the foregoing reasons, I respectfully dissent to the reversal of the judgment of the Colorado Court of Appeals. I would affirm that judgment reversing Gray's conviction based on an inadequate *Curtis* advisement and remanding the case for a new trial.

KIRSHBAUM and MULLARKEY, JJ., join in this concurrence and dissent.