The PEOPLE of the State of Colorado, Petitioner.

v.

Daryl C. ZIGLAR, Respondent.

No. 01SC193.

Supreme Court of Colorado, En Banc.

March 25, 2002.

---

Ken Salazar, Attorney General, Laurie A. Booras, First Assistant Attorney General, Denver, CO, Attorneys for Petitioner.

David S. Kaplan, Colorado State Public Defender, Nancy J. Lichtenstein, Deputy State Public Defender, Denver, CO, Attorneys for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

We granted certiorari to determine whether the court of appeals erred in remanding Daryl Ziglar's conviction as a habitual criminal on the grounds that the trial court gave an incorrect *Curtis* advisement during the sentencing hearing. *People v. Ziglar*, No. 98CA2214, slip op. at 13 (Colo.App. Dec. 14, 2000) (not selected for official publication). We now conclude that the trial court's advisement, although unnecessary, was not in error because a defendant's admissions during the sentencing phase may serve as substantive evidence of the existence of prior felonies. We therefore reverse the judgment of the court of appeals and remand this case for reinstatement of Ziglar's habitual criminal status.

## I.

Daryl Ziglar went to trial on charges of having stabbed his wife. After the prosecution finished its case, the judge gave Ziglar a proper advisement pursuant to *People v. Curtis*, 681 P.2d 504 (Colo.1984) (*Curtis* advisement), concerning his right to testify. Ziglar chose not to testify. The jury ultimately convicted him of second degree assault[1] and one count of crime of violence.[2] Because the prosecution also charged Ziglar with habitual criminality,[3] the judge discharged the jury and then tried Ziglar on that issue.

During the habitual criminal proceedings, the prosecution presented its evidence of prior convictions. With defense approval, the prosecution requested the judge to give Ziglar a second *Curtis* advisement. The judge agreed and then told Ziglar:

If you testify, of course, the prosecution can cross-examine you about the issue of there being prior convictions. He can confront you with those prior convictions in this case. The big difference from the other one in the prior case in front of the jury, the jury could only consider those prior convictions as relating to your credibility. In this case, they are being submitted not only to establish whether there is a credible [sic] issue if you testify and substantively by me as evidence of your being a habitual offender. That is the difference in the advisement that I'll give you. I'll go through those in greater detail once you have consulted with [counsel]. That is essentially your right. Do you have any questions about those rights before I take a recess for a moment?

Ziglar answered the question negatively. When back from recess, the judge again asked Ziglar whether he understood the rights as related by the court, to which Ziglar answered, "Yes, Sir." The judge then covered each of the *Curtis* advisement's five

---

1. § 18–3–203, 8B C.R.S. (Supp.1996).

2. § 16–11–309, 8A C.R.S. (Supp.1996).

3. § 16–13–101 to 103, 8A C.R.S. (Supp.1996).

parts one by one, receiving affirmation after each that Ziglar understood. The judge finished by stating:

> And you further understand that the felony convictions, of course, that is what we are discussing today, and I would consider [them] both for the issue of credibility as well as for the issue of whether or not you are a habitual offender?

Ziglar again indicated his understanding, and told the judge that he had decided not to testify during the sentencing phase. The judge ultimately found beyond a reasonable doubt that Ziglar had been convicted of sufficient prior felonies to qualify as a habitual offender. Ziglar received the mandatory thirty-two year sentence and appealed on numerous bases.

While rejecting the bulk of Ziglar's contentions, the court of appeals ruled that during the sentencing hearing, the trial court had "twice incorrectly informed [Ziglar] that should he testify, evidence of his prior felony convictions could be used against him both substantively and for credibility purposes." *People v. Ziglar*, No. 98CA2214, slip op. at 13 (Colo.App. Dec. 14, 2000). The court relied on *People v. Lefebre*, 981 P.2d 650 (Colo.App. 1998), in holding that the prosecution must prove the habitual criminal charges without the aid of Ziglar's testimony during the sentencing phase except to the extent that the defendant's testimony might reflect upon his credibility. The court then remanded pursuant to *People v. Blehm*, 983 P.2d 779, 792 (Colo.1999) (holding proper procedure is remand to determine whether waiver was nonetheless knowing, voluntary, and intelligent after trial court's advisement fails *Curtis* ).[4] This appeal followed.

## II.

■ As explained in *Curtis* and its progeny, the right of a defendant to testify in his or her own defense is rooted in both the United States and the Colorado Constitutions. *Curtis*, 681 P.2d at 509–10. It follows

that, when a defendant chooses not to testify, he or she is waiving a constitutional right, *Rock v. Arkansas*, 483 U.S. 44, 50–51, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); such waiver is valid only when made knowingly, intelligently, and voluntarily. *See Curtis*, 681 P.2d at 512; *People v. Deskins*, 927 P.2d 368, 370 (Colo.1996).

The *Curtis* advisement ensures that those facing prosecution understand not only their right to take the stand, but also the consequences thereof, and that they may testify notwithstanding contrary advice from counsel. *Curtis*, 681 P.2d at 514. We have previously held that the *Curtis* advisement is not a precise litany, but must address the following five elements:

1) The right to testify exists;
2) The right is personal, and no one can prevent the defendant from testifying;
3) The defendant will be subject to cross-examination;
4) The cross-examination may reveal to the jury defendant's felony convictions, if any; and
5) Any convictions so revealed may be used to impeach the defendant's credibility.

*Blehm*, 983 P.2d at 793 (discussing *Curtis*, 681 P.2d at 514). In *Blehm*, we referred to elements three through five as the "consequences of testifying," necessary in the advisement to ensure the waiver is undertaken knowingly and intelligently. *Id.*

The final three elements of the *Curtis* advisement derive from section 13–90–101, 5 C.R.S. (2001) (hereinafter "witness statute"). The witness statute mandates that "all persons" may be witnesses, including those with criminal convictions. *Id.* It further permits the credibility of every witness to be "drawn in question," and states specifically that prior felony convictions may be used for that purpose. *Id.* ("[T]he conviction of any person for any felony may be shown for the purpose of affecting the credibility of such witness."). The 1883 statute repealed a statutory prohi-

4. We observe that *People v. Blehm* was decided before the court of appeals ruled in this case. Under *Blehm*, the proper forum for attacking a *Curtis* advisement is a post-conviction hearing, not direct appeal. *Blehm*, 983 P.2d at 792.

Hence, the propriety of addressing this issue on direct appeal is questionable. However, in light of our decision that the second *Curtis* advisement was unnecessary, we choose to address the issues raised.

bition on convicts taking the witness stand. *See Trackman v. People*, 22 Colo. 83, 84, 43 P. 662, 663 (1896). When it decided to allow those convicted to testify, the general assembly, in essence, directed that prior convictions are per se relevant to the issue of credibility. Defendants taking the stand are subject to the same credibility challenges as any other witness. *People v. Neal*, 181 Colo. 341, 343, 509 P.2d 598, 599 (1973). In short, the witness statute permits the admissibility of prior criminal convictions for impeachment purposes.

The Habitual Criminal Statute, sections 16–13–101 to 103, 6 C.R.S. (2001), also bears on the questions presented here. In adopting the statute, the general assembly imposed more rigid sentencing provisions for defendants who have been convicted of felonies on at least two previous occasions, i.e., "habitual criminals." *Id.* The statute includes not only sentencing guidelines, but also procedures that guide trial courts in the habitual offender phase of the proceedings. *Id.* We summarize those procedures relevant here.

First, at arraignment, the defendant must admit or deny the previous convictions alleged by the prosecution. § 16–13–103(3). If the defendant admits the convictions, then "no proof of such previous conviction is required"; the statute considers such an admission as conclusive proof of the felony conviction for purposes of the habitual criminal adjudication. *Id.* A denial (or refusal to answer) at arraignment triggers a bifurcated proceeding, the first phase being the trial on the substantive offense (hereinafter "trial phase"), the second being the habitual criminal determination (hereinafter "sentencing phase"). In the trial phase, the prosecution must prove the underlying offense beyond a reasonable doubt; in the sentencing phase, the prosecution must prove the existence of prior felonies beyond a reasonable doubt. *See* § 16–13–103(4)(b).

Pertinent here, the statute next addresses the defendant's testimony at the *trial* phase and the permissible use thereof. Should the defendant choose to testify during trial, the statute acknowledges that prosecutors may confront him or her with prior felony convic-

tions presumably in accord with the witness statute. Unlike the witness statute, however, the habitual criminal statute substantially restricts the use of a defendant's trial phase admissions. Because the prosecution must later prove the prior felonies at the sentencing phase, the statute directs that prior felony evidence elicited *during trial* is for "the sole purpose of impeachment of the defendant's credibility." § 16–13–103(5)(a). The statute makes clear that a defendant's admissions during the trial phase are *not* "conclusive proof" of the existence of the prior convictions, as they would be had those same admissions emerged at arraignment. *See* § 16–13–103(3). To remove any doubt, the statute adds:

> If, upon the trial of the issues upon the substantive offense charged [i.e., the trial phase], the defendant testifies in his or her own defense and, after having denied the previous conviction [at arraignment], admits that he or she has been previously convicted as alleged, the trial judge ... shall, in any sentencing hearing, consider any admissions of prior convictions elicited from the defendant in connection with his or her testimony on the substantive offense only as they affect the defendant's credibility. In any sentencing hearing, the prosecution shall be required to meet its burden of proving beyond a reasonable doubt the defendant's prior convictions by evidence independent of the defendant's testimony.

§ 16–13–103(5)(b). Hence, a judge may not use a defendant's admissions of prior felonies, elicited during the trial phase, as evidence of the existence of those felonies during the sentencing phase.

■ The statute's restrictions reflect the rationale this court set forth in *People v. Chavez*, 621 P.2d 1362 (Colo.1981). Before *Chavez*, courts interpreted the habitual criminal statute as relieving the prosecution of its burden to prove prior convictions if it managed to elicit an admission thereof from the defendant during trial. We held that such procedure impermissibly forced the defendant to choose between his constitutional right to testify in his own defense and his constitutional right to have the state prove

the elements of habitual criminality. *Id.* at 1366–67. The result was a restriction upon the use during the sentencing phase of a defendant's trial phase admissions. In 1981, the general assembly codified our holding in *Chavez. See* ch. 202, sec. 1, § 16–13–103, 1981 Colo. Sess. Laws 952, 952–53. The current statute remains unchanged in this respect. Thus, it is clear that if a defendant testifies at trial and admits a prior felony, that admission cannot later be used as substantive evidence in the sentencing phase.

### III.

However, the statute creates no such restriction with respect to the defendant's testimony during the sentencing phase itself. The language in the habitual criminal statute, "In any sentencing hearing, the prosecution shall be required to meet its burden ... by evidence independent of the defendant's testimony," cited by Ziglar, and relied upon by the court of appeals, cannot be read in isolation. *See State v. Hartsough,* 790 P.2d 836, 838 (Colo.1990) (instructing courts to examine the context in which statutory terms appear). The entire paragraph of section 16–13–103(5)(b), quoted above, clearly separates the sentencing phase from the trial phase. The paragraph's three references to testimony are all to a defendant's testimony *elicited during the trial phase.* Indeed the language could scarcely be clearer: "any admissions of prior convictions elicited from the defendant in connection with his or her testimony on the substantive offense." The statute never mentions a defendant testifying at the sentencing phase, and we therefore do not read its restrictions as extending to testimony elicited there.

The witness statute offers no support to defendant's position in that it contains no requirement that prior felony convictions be used for impeachment purposes only. The statute's language is permissive, allowing the court to receive prior conviction evidence that might otherwise be inadmissible. *See* § 13–90–101.

Most importantly, we observe that the policy considerations behind restricting the substantive use of a defendant's *trial phase* admissions simply do not apply to the substantive use of a defendant's *sentencing phase* admissions. The two phases are purposefully bifurcated. Because the prosecution must prove entirely separate facts in each phase, entirely separate evidence is relevant.

Were it not for the witness statute and a few other exceptions unimportant here,[5] evidence of a defendant's prior convictions would be inadmissible at trial, not because they are irrelevant, but because "the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it." 1 *McCormick on Evidence* § 186, at 650 n. 3 (John W. Strong, 5th ed. 1999) (quoting *State v. Goebel,* 36 Wash.2d 367, 218 P.2d 300, 306 (1950)); *see also* CRE 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."). When prior conviction evidence enters a trial, there is a risk the jury will "punish the accused for his prior anti-social behavior rather than weigh the evidence relevant to the specific occurrence in question." Arthur Best et al., *Colorado Evidence 2001 Courtroom Manual* 62 (2001).

In contrast, the prior convictions of an accused are wholly relevant to habitual criminal proceedings. Indeed, they are the crux of the hearing. The sentencing phase is bifurcated from the trial phase to avoid precisely the risks alluded to above. Because prior felony evidence is relevant to habitual criminal proceedings, we hold that when a defendant testifies during the sentencing phase, the judge may consider admissions elicited at that time as substantive evidence. While such admissions are not "conclusive proof," as they would be when admitted at arraignment, *see* § 16–13–103(3), they are some evidence that those felonies exist.

The decision by the court of appeals in *People v. Lefebre,* 981 P.2d 650 (Colo.App.

---

5. Of course other uses for prior crime evidence exist. CRE 404(b) accepts such evidence to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

1998), implies a different result. There, the court stated,

> Concerning the prospect of a *Curtis* advisement in the habitual phase of a trial, the Supreme Court has indicated that there is no need for such, because, among other things, such could needlessly confuse a defendant, and ultimately the jury, concerning the fact that *even his or her testimony in that phase can be considered only for impeachment purposes* and that the prosecution has an ongoing duty to prove the substantive charges of the habitual criminal counts with evidence other than the defendant's testimony.

*Id.* at 654 (citing *People v. Gray*, 920 P.2d 787 (Colo.1996)) (emphasis added). We observe that *People v. Gray* did not address a second *Curtis* advisement at the habitual phase. *See Gray*, 920 P.2d at 792–93. Rather, in *Gray* we reaffirmed *Curtis's* holding restricting the use of a defendant's *trial phase* admissions to impeachment, but we further ruled that a trial court's advisement omitting the words, "*only* for impeachment," when describing the use of prior felonies, was not error. *Id.* at 791 (emphasis in original). We also held in *Gray* that a trial court need not add an extra sentence to the *Curtis* advisement informing defendants of "the prosecution's continuing duty to prove a defendant's prior convictions by separate evidence." *Id.* at 793. Thus, we did not rule in *Gray* that a defendant's testimony during the sentencing phase is admissible only for impeachment. Our holding there was limited to a defendant's trial phase testimony. To the extent *Lefebre* comes to the contrary result, we overrule it.

### IV.

█ We turn now to the advisement that the trial court gave in this case. Because we hold that a defendant's admissions are admissible as substantive evidence during the sentencing phase, we conclude that the trial court's advisement here was not error.

In *Curtis*, we acknowledged that the advisement was not meant for the "narrow class of cases where a prior felony conviction is an element of the crime charged." *Curtis*, 681 P.2d at 514 n. 12. In *People v. Rivera*, 964 P.2d 561 (Colo.App.1998), the court of appeals stated correctly that it is error for a trial court to advise a defendant that elicited prior convictions will only be used to impeach credibility when those prior convictions are an element of the crime. *Id.* at 563–64. The sentencing phase of habitual criminal proceedings is precisely that class of cases: prior felonies are an element of habitual criminal charges. § 16–13–101, 6 C.R.S. (2001). Hence, evidence of prior felonies, including those elicited by a defendant on the witness stand, are admissible, substantive evidence during habitual criminal proceedings. The trial judge's advisement was correct.

### V.

█ Finally, we address the necessity of the second advisement delivered here and hold that the trial court need not give such an advisement.

We restate that in this case, the trial court gave the proper *Curtis* advisement during the trial phase of this proceeding, and the defendant chose not to testify. At the sentencing phase, the trial court gave the modified advisement—properly reflecting that the defendant's admissions could be used as substantive evidence—and the defendant again chose not to testify.

However, had the trial court declined to give the revised advisement, Ziglar would have continued in the belief that should he testify, his admissions could not be considered by the judge as substantive evidence, but only for impeachment. Such belief, while technically incorrect in light of our holding here, is harmless. Under that circumstance, he would have assumed the most favorable circumstance, and even in that light, made a decision not to testify. He could not claim prejudice because he was not "chilled" by a belief the convictions could be used substantively; he held no such belief.[6]

---

**6.** The trial judge is certainly not the sole or even primary source of information for defendants. Indeed, in the future, counsel will presumably advise defendants of the "consequences" of testi-

fying during the habitual phase. We conclude that any "chilling" effect on a defendant's decision to testify in the sentencing phase is a permissible one in light of our analysis here. Unlike

If, on the other hand, a defendant testifies, and later learns that the judge relied upon his testimony substantively, that defendant might be able to challenge the habitual determination.[7] But because we believe this presents a rare scenario, we decline to require every trial judge to re-advise defendants facing habitual criminal charges that their admissions of prior felonies may be used as substantive evidence.

Hence, we find no justification for imposing a requirement upon trial courts to give an amended advisement concerning the right to testify during the habitual phase. Accordingly, we reverse the judgment of the court of appeals and return this case for reinstatement of the trial court's ruling on habitual criminality.

in *Chavez,* 621 P.2d at 1366–67, the prosecution here must still prove every element of the offense. Our decision simply acknowledges that a defendant's testimony is "some evidence" of those elements, i.e., some evidence the prior convictions exist.

7. In such a circumstance, the reviewing court could then examine the record to see whether sufficient evidence existed, apart from the defendant's testimony, to support the judgment of habitual criminality.