23CA1302 Peo v Duran 03-12-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1302
Adams County District Court No. 17CR2828
Honorable Jeffrey Smith, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Louis Pete Duran,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE FREYRE
Brown and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 12, 2026

Philip J. Weiser, Attorney General, Brittany Limes Zehner, Senior Assistant
Attorney General & Assistant Solicitor General, Denver, Colorado, for Plaintiff-
Appellee

Megan A. Ring, Colorado State Public Defender, Stephen Arvin, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Louis Pete Duran, appeals his convictions of sexual assault on a child, sexual assault on a child - pattern of abuse, and sexual assault on a child - position of trust.  Duran contends that the trial court erred by (1) allowing his second private counsel to withdraw as his attorney without complying with the procedural requirements of Crim. P. 44; (2) erroneously defining "proof beyond a reasonable doubt"; and (3) violating Duran's right of confrontation by allowing a witness to testify while wearing a face mask.  We disagree and affirm the judgment.

I.    Background

¶ 2    In 2016, Duran's ex-girlfriend's daughter, C.A., informed a school counselor that Duran sexually assaulted her six years earlier.  The school reported the abuse to the police and C.A. participated in a forensic interview approximately one month later where she again disclosed the sexual abuse.  She testified at trial that on multiple occasions when her mother was working and not at home, Duran would instruct her to shower and would touch her inappropriately.  Duran denied the abuse and testified that he took care of C.A. but that he did not bathe her because he did not feel comfortable doing so.  A jury convicted Duran as charged.  The

1

court sentenced him to twelve years to life in the custody of the Department of Corrections.

## II.    Motion to Withdraw

¶ 3     Duran contends that the trial court's failure to follow Crim. P. 44(c) and (d) deprived him of his right to counsel resulting in structural error and mandating reversal of his convictions.  We are not persuaded.

### A. Additional Facts

¶ 4     Following the filing of charges, Duran retained his first private counsel to represent him.  In December 2021, private counsel filed a motion to withdraw that stated the attorney-client relationship had "deteriorated to the point that counsel [wa]s unable to give effective assistance of counsel and for other reasons specified under Colorado Rules of Professional Conduct Rule 1.16(b)(2), Colorado Rules of Professional Conduct Rule 1.16(b)(4), and Colorado Rules of Professional Conduct Rule 1.16(b)(5)."  Concurrent with this motion, counsel sent Duran a written notice to withdraw containing the following information:

- Counsel and the law firm were withdrawing as his attorney.

- The Adams County District Court would retain jurisdiction over this matter.

- Duran had the burden of keeping the court informed of where notices, pleadings, or papers may be served.

- The next scheduled court date is for arraignment on January 10, 2022.

¶ 5 On January 10, 2022 , Duran appeared for arraignment via Webex. The court addressed counsel's motion to withdraw in the following colloquy:

> TRIAL COURT: Okay. Let me look at this motion. All right. I don't see any objection in the record to the motion.
>
> Mr. Duran, are you objecting to the withdrawal of your client – I mean of your attorney?
>
> DURAN: No, sir.
>
> TRIAL COURT: Do the People have a position on the motion? I don't see anything filed by the People.
>
> PROSECUTOR: No. Thank you, Judge.
>
> TRIAL COURT: Okay. All right. Since there is no objection . . . I will grant the motion to withdraw.

¶ 6 Duran informed the court that he planned to hire new counsel.

3

¶ 7    New private counsel entered her appearance on March 29, 2022. On June 30, 2022, counsel and her law firm moved to withdraw stating that Duran failed to meet his contractual obligations. The pleading stated that Duran had a right to object to counsel's withdrawal. Counsel filed a special notice to set the matter for a hearing on the motion to withdraw, which stated that the motion and the notice had been sent to Duran. The court set a hearing for July 14, 2022. Counsel filed a certificate of service certifying that on July 1, 2022, she served a copy of the motion and notice of hearing on the defendant via Unites States mail and email.

¶ 8    At the July hearing, counsel informed the court that Duran had COVID-19 symptoms and would not be appearing. She did not state Duran's position on the motion, nor did she indicate whether he was able to attend virtually. After confirming that Duran had not appeared virtually, the trial court found that Duran's nonappearance constituted "no objection" to counsel's motion to withdraw and granted the motion. The prosecutor confirmed that this hearing was not a bond appearance date, so no warrant issued, and the court continued the case to the next bond appearance date.

¶ 9    Duran appeared pro se at his next hearing.  When the trial court asked Duran if he wished to be represented by an attorney, Duran responded that he did, but that his funds for an attorney had run low.  He never voiced any objection to the court's order allowing private counsel to withdraw or to the court granting the motion in his absence.  Nor did he assert that he desired the court to revisit its order allowing his second counsel to withdraw from the case.  Duran subsequently applied for and obtained representation from the public defender, who represented him at trial.

### B. Standard of Review and Applicable Law

¶ 10    We review a trial court's ruling on a motion to withdraw for an abuse of discretion.  *People v. DeAtley*, 2014 CO 45, ¶ 13.  A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when the decision is based on a misapplication of the law.  *Id.*  Under this standard, "we ask not whether we would have reached a different result but, rather, whether the trial court's decision fell within the range of reasonable options."  *People v. Archer*, 2022 COA 71, ¶ 23 (quoting *Hall v. Moreno*, 2012 CO 14, ¶ 54).

¶ 11    Whether the court correctly applied the law in ruling on a motion to withdraw is a question of law we review de novo. *DeAtley*, ¶ 13. We employ the same interpretive rules applicable to statutory construction to construe a rule of criminal procedure. *Kazadi v. People*, 2012 CO 73, ¶ 11. We will first read the language of the rule consistent with its plain and ordinary meaning, and, if it is unambiguous, we apply the rule as written. *People* v. *Angel*, 2012 CO 34, ¶ 17.

¶ 12    The parties agree that Duran never objected to counsel's motion to withdraw. Duran argues that because he was not present at the hearing, he never had the chance to object and that the lack of an objection should not prejudice him. The People respond that because Duran had notice of the hearing and its purpose, he had the opportunity to object both in writing before the hearing and verbally at the scheduled hearing but did not do so.

¶ 13    While we acknowledge that this presents a close issue, we agree with the People. The record shows that Duran received a copy of counsel's motion approximately two weeks before the hearing on the motion, which explained his right to object to her withdrawal, and at the same time, he received notice of the hearing

set to address the motion.  The record also shows that Duran and counsel communicated immediately before the hearing and that Duran told counsel he could not attend due to illness.  During that conversation, he could have, but apparently did not, communicate any objection to the motion, nor did he ask counsel to reset the hearing to a date at which he could be present.  Moreover, at the next hearing, when the court specifically asked Duran about representation by counsel, Duran never voiced any disagreement with the court's ruling granting counsel's motion to withdraw.

¶ 14    Under these circumstances, we conclude that because Duran never raised any issues regarding the court's noncompliance with Crim. P. 44 or that it had denied Duran his counsel of choice, the court did not have "an adequate opportunity to make findings of fact and conclusions of law" addressing these issues.  *People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004).  Therefore, we review this unpreserved contention for plain error.  *Zoll v. People*, 2018 CO 70, ¶¶ 16-18.  An error is plain when it is obvious and substantial and so undermines the fairness of the proceeding as to cast serious doubt on the reliability of the judgment.  *Hagos v. People*, 2012 CO 63, ¶ 14.

¶ 15    The Sixth Amendment right to counsel includes a defendant's right to retain an attorney if the defendant is financially able. *DeAtley*, ¶ 14. "The right to select an attorney of choice whom the defendant trusts is considered central to the adversary system and of substantial importance to the judicial process." *Id.* at ¶ 15.

¶ 16    Crim. P. 44 governs an attorney's withdrawal in a criminal case. Crim P. 44 states:

> (1) A lawyer may withdraw from a case only upon order of the court. In the discretion of the court, a hearing on a motion to withdraw may be waived with the consent of the prosecution and if a written substitution of counsel is filed which is signed by current counsel, future counsel and the defendant. A request to withdraw shall be in writing or may be made orally in the discretion of the court and shall state the grounds for the request. A request to withdraw shall be made as soon as practicable upon the lawyer becoming aware of the grounds for withdrawal. Advance notice of a request to withdraw shall be given to the defendant before any hearing, if practicable. Such notice to withdraw shall include:
>
> (I) That the attorney wishes to withdraw;
>
> (II) The grounds for withdrawal;
>
> (III) That the defendant has the right to object to withdrawal:
>
> (IV) That a hearing will be held and withdrawal will only be allowed if the court approves;

8

(V) That the defendant has the obligation to appear at all previously scheduled court dates;

(VI) That if the request to withdraw is granted, then the defendant will have the obligation to hire other counsel, request the appointment of counsel by the court or elect to represent himself or herself.

(2) Upon setting of a hearing on a motion to withdraw, the lawyer shall make reasonable efforts to give the defendant actual notice of the date, time and place of the hearing. No hearing shall be conducted without the presence of the defendant unless the motion is made subsequent to the failure of the defendant to appear in court as scheduled. A hearing need not be held and notice need not be given to a defendant when a motion to withdraw is filed after a defendant has failed to appear for a scheduled court appearance and has not reappeared within six months.

Crim. P. 44(d)(1)-(2).

¶ 17    "When a retained defense attorney files a motion to withdraw under Crim. P. 44(c), the trial court necessarily must make an inquiry into the foundation for the motion when balancing 'the need for orderly administration of justice with the facts underlying the request.'" *DeAtley*, ¶ 15 (quoting Crim. P. 44(c)); *People v. Alengi*, 148 P.3d 154, 159 (Colo. 2006) ("Because there exists a strong presumption against the waiver of a fundamental constitutional

9

right, the trial court has the duty to make a careful inquiry about the defendant's right to counsel and his or her desires regarding legal representation.").

¶ 18     Violation of a defendant's right to counsel of choice is structural error. *See Anaya v. People*, 764 P.2d 779, 783 (Colo. 1988) ("[T]here is no way to know whether the character of the proceedings would have changed, whether counsel would have made different decisions, or whether the defense strategy would have been different if [counsel of choice] had represented [the defendant]. Under these circumstances, prejudice to the defendant is assumed without the necessity of showing specific prejudice." (citation and internal quotation marks omitted)); *People v. Ragusa*, 220 P.3d 1002, 1010 (Colo. App. 2009).

## C. Analysis

¶ 19     Even assuming the trial court did not follow the Crim. P. 44(d)(2) requirement to hold a hearing on a motion to withdraw, we discern no plain error, for three reasons.

¶ 20     First, no one disputes that Duran received counsel's notice or her written motion to withdraw. The notice stated that counsel had "given actual notice to the client prior to filing this Motion both via

10

U.S. Mail and email." As well, both pleadings stated, "The Defendant has the right to object to withdrawal of counsel. A hearing will be set and withdrawal will only be allowed if the court approves."

¶ 21 Second, the record contains, and no one disputes that counsel then filed a Notice To Hear, setting the matter for a hearing on the motion for July 14, 2022 at 8:30 a.m. And the record shows that counsel served the Notice To Hear on Duran via U.S. Mail and email on July 1, 2022. Indeed, Duran never claimed that he was unaware of the motion or the hearing.

¶ 22 Third, counsel appeared for the hearing and told the court that she had spoken with Duran and that he could not appear at the hearing because he was ill. While counsel did not represent Duran's position on the motion, nothing in the record suggests that Duran told counsel he objected to the motion, or that he asked for the hearing be rescheduled to another day during their conversation. Indeed, Duran did not make any such representations when he next appeared and discussed the issue of representation with the court. Instead, he implicitly acknowledged that there was cause for the motion by stating that his funds to

11

retain private counsel had run low. And, consistent with that statement and his lack of objection, Duran then applied for and received an attorney through the public defender's office.

¶ 23 Because Duran and counsel were regularly communicating, and there was no evidence of any disagreements between them, we discern no abuse of discretion in the court's decision to grant the motion in Duran's absence.

¶ 24 We are not persuaded otherwise by Duran's reliance on *People v. Cardenas*, 2015 COA 94M, ¶ 13, where a division of this court held that automatic reversal was required because the trial court's noncompliance with Crim. P. 44 violated the defendant's right to be present. *See People v. Wolfe*, 213 P.3d 1035, 1036 (Colo. App. 2009) (one division of court of appeals is not bound by decision of another division). In *Cardenas*, private counsel filed a motion to withdraw that asserted irreconcilable differences of opinion between him and the client concerning the case. *Id.* at ¶ 5. In a bench conference, counsel alluded to the absence of communication. *Id.* at ¶ 6. The court set the matter for a hearing before a different judge so the parties could make a more complete record, and it asked if the defendant objected to the motion. *Id.* The defendant

objected to counsel's withdrawal. At the next hearing, the trial court conducted an in camera hearing to obtain the reasons for counsel's motion to withdraw. *Id.* at ¶ 7. The hearing occurred in the judge's chambers and outside of the defendant's presence. *Id.* Without any inquiry of the defendant, the court granted the motion. *Id.*

¶ 25    Unlike *Cardenas,* nothing in counsel's motion suggested any disagreement between Duran and counsel. It simply asserted that Duran "has failed to meet his expectations and responsibilities under the Agreement between counsel and client." Moreover, the record shows that they regularly communicated and did so immediately before the hearing.

¶ 26    Additionally, unlike the defendant in *Cardenas*, who clearly objected to counsel's withdrawal but never got to explain his objection following the in camera hearing, Duran received written notice of his right to object, communicated his illness and inability to attend the hearing to counsel immediately before the hearing, but never told counsel, or the court at the following hearing, that he objected to the withdrawal or wanted the hearing to be rescheduled. Thus, we conclude that even though Duran did not appear at the

hearing, he had the opportunity to make his objection to the motion through counsel and to request the opportunity to be present if he so desired.[1]  When he next appeared and discussed representation with the court, Duran explained that he was "low on funds" but never asked any questions or voiced concerns about counsel's withdrawal.  In the end, Duran was represented by counsel from the public defender's office at trial, and nothing in the record suggests that he was dissatisfied with its representation.

¶ 27     Under the unique circumstances of this case, we conclude that any noncompliance with Crim. P. 44(d)(2) did not "seriously affect the fairness, integrity or public reputation of [the] judicial proceedings," and therefore the court did not deny Duran's right to counsel of choice.  *Hagos*, ¶ 18.

---

[1] We reject the People's argument that we should construe Duran's nonappearance as a waiver of his right to be present.  While the record here shows that Duran knew of the July hearing, his absence was due to illness, and nothing in the record suggests that he knowingly and intentionally waived his right to attend the hearing or otherwise voluntarily chose not to attend.  Because we "indulge every reasonable presumption against waiver," we decline to find an implied waiver from Duran's absence.  *People v. Garcia*, 2024 CO 41M, ¶ 43.

### III. Jury Instruction

¶ 28     Duran next contends that the trial court erroneously defined "proof beyond a reasonable doubt" for the jury.  We disagree.

#### A. Additional Background Information

¶ 29     Before 2022, the Colorado model criminal jury instruction defined reasonable doubt as follows:

> Reasonable doubt means a doubt based upon reason and common sense which arises from a fair and rational consideration of all of the evidence, or the lack of evidence, in the case. It is a doubt which is not a vague, speculative or imaginary doubt, but such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves.

COLJI-Crim. E:03 (2021).

¶ 30     In 2022, the model instruction concerning the presumption of innocence, burden of proof, and reasonable doubt was substantially revised to read, in its entirety, as follows:

> Every person charged with a crime is presumed innocent.  This presumption of innocence remains with the defendant throughout the trial and should be given effect by you unless, after considering all the evidence, you are convinced that the defendant is guilty beyond a reasonable doubt.
>
> The burden of proof in this case is upon the prosecution.  The prosecution must prove to the satisfaction of the jury beyond a

15

reasonable doubt the existence of each and every element necessary to constitute the crime charged. This burden requires more proof that something is highly probable, but it does not require proof with absolute certainty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. If you are firmly convinced of the defendant's guilt, then the prosecution has proven the crime charged beyond a reasonable doubt. But if you think there is a real possibility that the defendant is not guilty, then the prosecution has failed to prove the crime charged beyond a reasonable doubt.

After considering all the evidence, if you decide the prosecution has proven each of the elements of a crime charged beyond a reasonable doubt, you should find the defendant guilty of that crime.

After considering all the evidence, if you decide the prosecution has failed to prove any one or more of the elements of a crime charged beyond a reasonable doubt, you should find the defendant not guilty of that crime.

COLJI-Crim. E:03 (2022).

¶ 31 Defense counsel objected to using the newer reasonable doubt instruction stating,

It's our position that proof beyond a reasonable doubt – the language specifically where it says "firmly convinced of the defendant's guilt" and ends with "but if you think there is a real possibility," brings down the burden of proof. Providing this instruction

16

to the jurors would violate Mr. Duran's constitutional rights on the federal and Colorado level and his right to due process and a fair and impartial jury.

¶ 32    The prosecutor responded, "[T]he People have no problem with the Court providing the new instruction. I believe it was created and approved by the Colorado Supreme Court; so we don't foresee any issues if the Court wants to provide that new instruction. That's the one I submitted in the packet."

¶ 33    The trial court concluded as follows:

> I've been using the new one. I'm going to use the new one in this case, and we're going to find out if the Supreme Court thinks it's wrong. I think most trial judges are probably using that instruction now. So at this point, I have no reason to believe that it's unconstitutional. But, again, that's ultimately for the Supreme Court to decide if and when a case gets up there challenging that. But for today's purposes, I am going to use the new one because I think it is a little more easily understood by jurors who don't have a law background. So that's what I'm going to talk to them about today, and that's what I'll give in my final instruction package with the objection noted.

### B. Standard of Review and Applicable Law

¶ 34    The Due Process Clause of the United States Constitution "protects the accused against conviction except upon proof beyond

17

a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 (1970); *accord Vega v. People*, 893 P.2d 107, 111 (Colo. 1995). The U.S. Supreme Court has thus made clear that the reasonable doubt standard is "indispensable" in criminal prosecutions. *See Winship*, 397 U.S. at 364.

¶ 35 The trial court must properly instruct the jury on the reasonable doubt standard. *Tibbels v. People*, 2022 CO 1, ¶ 22. Although the court has some flexibility in how it defines reasonable doubt, an instruction that lowers the prosecution's burden of proof below the reasonable doubt standard is structural error requiring automatic reversal. *Id.* at ¶¶ 22-25. To determine whether an instruction impermissibly lowered the burden of proof, we apply a "functional test, asking whether there is a reasonable likelihood that the jury understood [the] contested instruction, in the context of the instructions as a whole and the trial record, to allow a conviction based on a standard lower than beyond a reasonable doubt." *Id.* at ¶ 36.

¶ 36 Model jury instructions are "intended as guidelines and should be considered by trial courts." *People v. Morales*, 2014 COA 129,

¶ 42. But they are not binding and they are not the law. *Krueger v. Ary,* 205 P.3d 1150, 1154 (Colo. 2009); *People v. Randolph,* 2023 COA 7M, ¶ 22. Nor does adherence to a model instruction provide a "safe harbor that insulates instructional error from reversal." *Garcia v. People,* 2019 CO 64, ¶ 22. Instead, we review such an instruction as we would any other. *See id.* at ¶ 23.

¶ 37 We review de novo whether a jury instruction impermissibly lowered the prosecution's burden of proof. *Tibbels,* ¶ 22. But if the instructions properly inform the jury of the law, the trial court has broad discretion to determine their form and style. *McDonald v. People,* 2021 CO 64, ¶ 54. Thus, if the instructions as a whole correctly inform the jury of the prosecution's burden of proof beyond a reasonable doubt, there is no due process violation. *Johnson v. People,* 2019 CO 17, ¶ 14.

## C. Analysis

¶ 38 Duran challenges five aspects of the 2022 model jury instruction, as given by the trial court, contending that (1) the omission of the "lack of evidence" language from the prior COLJI instruction requires reversal; (2) the instruction erroneously omitted the "hesitate to act" language from the prior COLJI instruction; (3)

19

the "real possibility" language in the new instruction lowered the burden of proof; (4) the "firmly convinced" language in the new instruction lowered the burden of proof; and (5) the changes cumulatively lowered the burden of proof. We disagree.

¶ 39    First, as two previous divisions of this court concluded, not including "lack of evidence" in a reasonable doubt instruction does not lower the prosecution's burden of proof. *People v. Schlehuber*, 2025 COA 50, ¶ 20; *People v. Melara*, 2025 COA 48, ¶ 24. As explained in *Schlehuber*, the 2022 model reasonable doubt instructions do not preclude the jury's consideration of the prosecution's lack of evidence. *Schlehuber*, ¶ 22. This concept was included in the trial court's instruction, which informed the jury that "[t]he burden of proof in this case is upon the prosecution" and that "[e]very person charged with a crime is presumed innocent." *Id.* Moreover, the ultimate paragraph of the court's instruction told the jury that it must consider "all the evidence" when determining whether the prosecution met its burden of proof. *Id.* Thus, the court's instruction clearly informed the jury that, "if the prosecution fails to present sufficient evidence of guilt, it will not have met its burden." *Id.* (citing *United States v. Petty*, 856 F.3d 1306, 1311

20

(10th Cir. 2017)); *see also Rault v. Louisiana*, 772 F.2d 117, 137 (5th Cir. 1985) ("These instructions necessarily conveyed the concept that a reasonable doubt would arise in the absence of evidence sufficient to show guilt beyond a reasonable doubt.").

¶ 40 Second, we reject Duran's contention that the court undermined the proof beyond a reasonable doubt standard by omitting the "hesitate to act" language that appeared in the 2021 model instructions. We disagree because, like the *Schlehuber* division, we do not see why it would be error to exclude "hesitate to act" in a reasonable doubt instruction, "so long as the instruction otherwise correctly defines the reasonable doubt standard," as it does here. *Schlehuber*, ¶ 28.

¶ 41 Third, we disagree with Duran that including language that a reasonable doubt requires a "real possibility that the defendant is not guilty" lowered and shifted the burden of proof. *See id.* at ¶ 34. The court's instruction said that "reasonable doubt" is a "real possibility that defendant is not guilty" and that proof beyond a reasonable doubt "requires more than proof that something is highly probable." This definition of reasonable doubt "has been consistently approved by federal courts as an accurate expression

21

of the reasonable doubt standard." *Id.* at ¶ 30; *see e.g., Victor v. Nebraska*, 511 U.S. 1, 24-27 (1994) (Ginsburg, J., concurring in part and concurring in the judgment) (concluding that a similar definition of reasonable doubt "surpasse[d] others . . . in stating the reasonable doubt standard succinctly and comprehensibly"). The "phrase 'real possibility' correctly directs the jury not to acquit the defendant simply because it can conceive of some fanciful possibility that the defendant is not guilty" and explains "the threshold [that] the prosecution must overcome" to prove each element of the offense by a reasonable doubt. *Schlehuber*, ¶¶ 31, 34.

¶ 42   Fourth, we disagree with Duran's contention that the "firmly convinced" phrase lowered the prosecution's burden of proof. As the *Schlehuber* division explained, "[t]he phrase 'firmly convinced' correctly connotes a standard of 'near certitude'" greater than "highly probable" but less than absolute certainty. *Id.* at ¶ 31 (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)); *see People v. Camarigg*, 2017 COA 115M, ¶ 49 (recognizing the distinction between "proof beyond a reasonable doubt and proof beyond all doubt"). Moreover, another division of this court in *Melara*

characterized the "firmly convinced" phrase as "an accurate statement of the law." *Melara*, ¶ 30.

¶ 43     Fifth, we reject Duran's argument that the court did not correctly instruct the jury on the prosecution's burden of proof because of the cumulative effect of the deficiencies in the court's instruction. Because we conclude that the court did not err in giving the instruction, there can be no cumulative error.

## IV.     Confrontation Clause

¶ 44     Duran next contends that the trial court erred by allowing a witness to testify at trial while wearing a face mask. We disagree.

### A. Additional Background Information

¶ 45     At trial, Blair Garnett testified for the prosecution. In 2016, Garnett was a program manager for Youth Empowerment Support Services, and C.A. was in Garnett's class. Before Garnett's testimony began, the trial court asked her to remove her face mask. Garnett responded, "Even though I'm still contagious with strep throat? I'm happy to remove it if you would like, though." The following discussion occurred outside the presence of the jury:

> [DEFENSE COUNSEL]: So I think the situation – we're objecting, for the record. I think at this point, it would be more harmful than helpful

to, you know, not have her testify just because she is wearing a mask. I don't want anybody to get contagious with strep throat or anything like that. So I think, you know, just –

TRIAL COURT: I don't know how material she is. I have no idea what this witness is going to tell me. So I don't know how material she is to this case.

[PROSECUTOR]: Judge, I don't have an opinion. I think she's behind glass. I don't know how far strep throat can travel.

TRIAL COURT: I do have – I mean, she's just in close proximity to our jurors; so I do have concerns about that. Like I said, I don't know what this witness – how long –

[PROSECUTOR]: She's an outcry witness. I don't think super long.

TRIAL COURT: One of the teachers?

[PROSECUTOR]: That C.A. disclosed to.

TRIAL COURT: So I think it's probably discretionary to the Court. That's why I wanted to know a little bit about what this witness is going to be testifying to. Sounds like a short witness.

[PROSECUTOR]: I think so. I don't know how long their cross will be.

TRIAL COURT: Right. But basically she's just as an outcry witness that received a report from the victim?

[PROSECUTOR]: Uh-huh.

24

TRIAL COURT: Okay. Just with the health and safety concerns, at this point, I'm going to allow her to leave her mask on, noting the defense's objection to that. In the fact that she's that material of a witness in this case, I mean, I might have a different view obviously of the victim or someone else. But it sounds like she'll be a short witness and sounds like we've already heard through other witnesses what we're going to remember from this witness.

¶ 46    The trial court allowed Garnett to testify with her mask on "for health reasons." Garnett testified that, in the week leading up to her outcry, C.A. seemed "particularly upset" and avoided making eye contact with her. When C.A. asked to speak with Garnett privately, C.A. was "terrified, frightened, agitated." C.A. told Garnett that someone she knew touched her where they were not supposed to and that she had told her mother the night before. C.A. began to cry.

B. Standard of Review and Applicable Law

¶ 47    We review de novo whether a trial court violated a defendant's rights under the Confrontation Clause. *Nicholls v. People,* 2017 CO 71, ¶ 17. The United States and Colorado Constitutions guarantee criminal defendants the right to confront witnesses called to testify against them. *People v. Reynolds-Wynn*, 2024 COA 33, ¶ 23. The

25

Confrontation Clause of the United States Constitution provides that a defendant shall be entitled to "be confronted with the witnesses against him." U.S. Const, amend. VI. Similarly, though not identically, the Colorado Constitution provides that "[i]n criminal prosecutions the accused shall have the right to . . . meet the witnesses against him face to face." Colo. Const, art. II, § 16.

¶ 48    Trial courts are accorded broad discretion to regulate courtroom conduct. *People v. Woellhaf*, 87 P.3d 142 (Colo. App. 2003). The trial court's management of the courtroom is reviewed for an abuse of discretion. *People v. Rudnick*, 878 P.2d 16, 21 (Colo. App. 1993). "A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when the trial court misapplies or misconstrues the law." *Fisher v. People,* 2020 CO 70, ¶ 13. Under this standard, "we ask not whether we would have reached a different result but, rather, whether the trial court's decision fell within the range of reasonable options." *Archer,* ¶ 23 (quoting *Moreno*, ¶ 54).

## C. Analysis

¶ 49    We reject Duran's argument that the trial court's decision to allow Garnett to wear a face mask during her testimony violated his

confrontation rights. While we recognize that Colorado's constitution provides a right to "face to face" confrontation, Colo. Const. art. II, § 16, the Colorado constitution "secures identical rights as the federal right to confrontation." *People v. Collins*, 2021 COA 18, ¶ 37. And the U.S. Supreme Court has held that the right to face-to-face confrontation is not absolute and may be relaxed "where denial of such confrontation is necessary to further an important public policy." *Maryland v. Craig*, 497 U.S. 836, 850 (1990).

¶ 50 The trial court stated that Garnett could keep her mask on to protect the jurors and other courtroom participants from contracting strep throat, a legitimate public policy reason to minimally relax Duran's confrontation right. Duran and the jurors were still able to see Garnett's overall body movements, hear the tone of her voice, and see her eye movements. *People v. Garcia*, 2022 COA 144, ¶ 19 (finding that "a mask covering a juror's nose and mouth does not make it impossible to assess the juror's demeanor" because demeanor includes the language of the entire body). And Garnett's testimony as an outcry witness was cumulative to C.A.'s testimony. C.A. testified that she told Garnett

27

that she was touched inappropriately a day after she told her mother.

¶ 51    Accordingly, we discern no abuse of discretion in the court's decision to allow Garnett to testify with a mask on, nor do we perceive a violation of Duran's constitutional right to confrontation flowing from that decision.

## V.    Disposition

¶ 52    The judgment is affirmed.

JUDGE BROWN and JUDGE SCHUTZ concur.